*183 WESLEY, Circuit Judge:
Appellants Antonio Rivera, Jason Villa-man, and John Whaley appeal from judgments entered on June 27, 2013, in the United States District Court for the Eastern District of New York (Feuerstein, J.). Appellants operated two bars on Long Island that also functioned as illegal brothels. They advertised a decent salary and free transportation to and from work to recruit attractive, undocumented aliens to work in a role they described as “waitress.” The “waitresses,” who became the victims in Appellants’ scheme, were told they would be expected to dress suggestively, serve drinks, and possibly dance with customers. The reality was very different: Appellants threatened the victims with violence and deportation if they spoke to the authorities or quit, forced them to drink alcohol until they were intoxicated, required them to strip, and compelled them to be fondled by customers, to be groped by customers, and to have sex with customers.
Before trial, the Government moved in limine to, among other things, preclude Appellants from inquiring or offering evidence as to “the victims’ other sexual behavior including ... any other employment in a sexualized business” under Federal Rule of Evidence 412. Gov’t Mot. in Lim., Apr. 12, 2011, Dist. Ct. Dkt. No. 139, at 2. Whaley, joined by Villaman,[1] opposed this branch of the motion, arguing that “[¡Information which shows that the alleged victims engaged in commercialized or similar sex without force, fraud or coercion goes to the heart of the question of guilt or innocence in this case.” Villaman App. 147. The district court, after argument, precluded testimony about the victims’ employment in other sexualized businesses.
Whaley also objected to the Government’s proposed jury instruction on the sex trafficking charge, arguing that the jury should not be instructed that it could consider any aspects of the victims’ backgrounds since the defense was precluded from questioning victims about their prior life experiences. The district court overruled Whaley’s objection.[2]
*184 At trial, Appellants’ counsel elicited testimony that could suggest that the victims consented to being prostitutes. For example, some of the victims testified that they had quit working at the bars but then returned after some time for various reasons. A few of the victims acknowledged that they knew others who worked at the bars and had visited the bars prior to their employment there, or had even recruited relatives or friends to work at the bars.
Appellants’ counsel made use of this testimony at closing. For example, Rivera’s counsel argued that the victims “had the chance to see the[] bars for what they were before they started working,” including viewing “non-stop debauchery.” Villa-man App. 765. He also contended that the victims chose to be prostitutes at the bars because they “would make a lot [more] money ... than they could make in a factory, or in a nail salon, or in any of the other places that they worked at illegally prior to working at [the bars].” Id. Rivera’s counsel asked the jury “what woman would come for a job interview, observe this, and then work there unless she knew what she was getting into and how much money she was going to make to do it?” Id.
Appellants were convicted of sex trafficking, forced labor, and alien harboring and transportation charges. We address Appellants’ arguments that the district court erred: (1) in granting the Government’s motion in limine to exclude cross-examination regarding the victims’ other employment in a sexualized business with respect to Appellants’ sex trafficking and forced labor charges; (2) in giving the sex trafficking jury charge; and (3) in imposing unreasonable sentences upon them. We hold first that the exclusion of evidence of the victims’ other sexual behavior did not violate the Appellants’ right to present a complete defense and to confront witnesses. We next hold that while the sex trafficking jury charge was error, that error, given the evidence in this case, was harmless. Finally, we hold that the sentences imposed were procedurally unreasonable, and a full resentencing is warranted.
DISCUSSION
Although we generally review evidentiary rulings for abuse of discretion, Manley v. AmBase Corp., 337 F.3d 237, 247 (2d Cir.2003), we review interpretations of law de novo, including whether an evidentiary ruling violates a defendant’s constitutional rights, see United States v. Tropeano, 252 F.3d 653, 657 (2d Cir.2001).
Federal Rule of Evidence 412(a)(1) provides that in a case involving allegations of sexual misconduct, “evidence offered to prove that a victim engaged in other sexual behavior” is inadmissible. The Rule “aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details.” Fed. R.Evid. 412 advisory committee’s note. The exclusion, however, is not absolute. The Rule wisely makes explicit that “evidence whose exclusion would violate the defendant’s constitutional rights” should be admitted. Fed.R.Evid. 412(b)(1)(C). The constitutional rights contemplated by this exception include the accused’s right under the Sixth Amendment to confront a witness. See, e.g., Olden v. Kentucky, 488 U.S. 227, 231, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988). This includes “a meaningful *185 opportunity to present a complete defense” at trial, Holmes v. South Carolina, 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) (internal quotation marks omitted), and to confront witnesses, including by “impeach[ing] the credibility of a prosecution witness by cross-examination,” Davis v. Alaska, 415 U.S. 308, 309, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
Appellants contend that they were improperly precluded from cross-examining the victims about their prior work in the sex industry. Because the sex trafficking and forced labor statutes both require an analysis of “all the surrounding circumstances,” see 18 U.S.C. §§ 1589(c)(2), 1591(e)(4), Appellants argue that a victim’s “experience in the sex industry, and knowledge of its practices, is ... relevant to whether she was coerced or whether, on the other hand, she knew precisely what she was getting into and accepted it as part of a money-making endeavor.” Villaman Br. 27 (emphasis added).[3] Appellants contend that, by excluding inquiry on this subject, the district court prevented them from conducting a full cross-examination, thereby violating their rights under the Confrontation Clause. We disagree.
Evidence of victims’ prior acts of commercial sex is irrelevant to whether those victims were coerced into working as prostitutes. Appellants wanted to cross-examine the testifying victims about prior work as prostitutes before Appellants hired them to work in their bars. Appellants hoped to suggest that having already worked as prostitutes, the victims would not have been deceived by Appellants and that they “knew ... what [they were] getting into.” Villaman Br. 27. But knowing that suggestive behavior or even sexual acts might become a part of the job does not mean that the victims therefore consented to being threatened or coerced into performing sexual acts they did not wish to perform. The very purpose of the Rule is to preclude defendants from arguing that because the victim previously consented to have sex — for love or money — her claims of coercion should not be believed.
The Government did not assert that the ■victims had not been engaged in sexualized business before they worked at the bars. The focus of the Government’s case was that the victims were forced to perform sex acts against their will. Prior sexual conduct for money or pleasure was irrelevant to whether the victims’ sexual activities at the bars were the result of coercion. See United States v. Roy, 781 F.3d 416, 420 (8th Cir.2015) (excluding evidence of victim’s prior prostitution as irrelevant to defendant’s charged conduct of sex trafficking); United States v. Valenzuela, 495 Fed.Appx. 817, 819-20 (9th Cir.2012) (“Appellants cannot show the relevance of questions about prior prostitution to either Appellants’ knowledge of the use of force, fraud, or coercion, or the victims’ consent to work in prostitution.”); United States v. Cephus, 684 F.3d 703, 708 (7th Cir.2012) (“[Defendants] wanted to suggest that having already been a prostitute she would not have been deceived by [Defendant] and therefore her testimony that she was coerced into working for him — an element of one of the charged offenses when the prostitute is not a minor, 18 U.S.C. § 1591(a) — should be disbelieved. But the testimony sought to be elicited by the *186 cross-examination would have been irrelevant. Even if no promises were made to [the victim], this would not be evidence that she consented to be beaten and to receive no share of the fees paid by the johns she serviced.”). That some of the victims may have been prostitutes before working at the bars does not suggest that Appellants did not later threaten them with violence or deportation in order to coerce them into commercial sex. Thus, there was no relevant use of the cross-examination testimony sought by Appellants and the district court did not err in precluding it.[4]
Even without pursuing the precluded line of inquiry, Appellants effectively cross-examined the victims and argued that they engaged in prostitution for pecuniary reasons — not because they were forced. The testimony that some of the victims quit working and subsequently returned or chose to work at the bars because they earned more money than they would at their next-best employment option could have been received by the jury as suggesting consent. Thus, the testimony elicited by Appellants’ counsel, as emphasized by Rivera’s counsel in closing, allowed Appellants to contend that the victims freely consented to engage in prostitution. See United States v. Zayac, 765 F.3d 112, 118-19 (2d Cir.2014), cert. denied,, — U.S. -, 135 S.Ct. 2858, — L.Ed.2d - — - (2015) (any error precluding evidence defendant claimed would bolster his defense of fearing co-conspirator was harmless since defendant’s fear was admitted through other testimony). Because Appellants were able to argue that the victims voluntarily engaged in prostitution, the court’s exclusion of any evidence concerning the victims’ prior engagement in a sexualized business did not prejudice Appellants with respect to their sex trafficking or forced labor charges.
Appellants also argue that the district court erred in instructing the jury on the sex trafficking charges because the court’s definition of “coercion” incorrectly eliminated reference to whether a “reasonable person” in the victims’ circumstances would also feel coerced. We review challenges to jury instructions de novo but “will reverse only where the charge, viewed as a whole, demonstrates prejudicial error.” United States v. Coppola, 671 F.3d 220, 247 (2d Cir.2012). ‘Where jury instructions omit an element of the charged crime, we review the error for harmlessness beyond a reasonable doubt.” Id. at 248. An error in the charge is harmless if the verdict “would surely not have been different absent the constitutional error.” Sullivan v. Louisiana, 508 U.S. 275, 280, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (emphasis omitted).
The district court’s instruction did provide that the coercion must make the victim “reasonably believe that she ... would suffer serious harm if she refused to continue providing sex acts.” Villaman App. 796 (emphasis added). However, the instruction then focused on “the particular Jane Doe” and did not charge that the Government must prove that a reasonable person of the same background and circumstances would have also felt coerced. The correct standard is a hybrid: it permits the jury to consider the particular vulnerabilities of a person in the victim’s position but also requires that her acquies *187 cence be objectively reasonable under the circumstances. See 2-47A Modern Federal Jury Instructions — Criminal P 47A.03, Instruction 47A-21. We find that this error was harmless beyond a reasonable doubt; the threats of harm to the victims were sufficiently serious to cause both the victims and reasonable people of the same background and in the same circumstances to feel coerced.[5] Victims testified that Appellants threatened that they would report the victims to the immigration authorities and that they were threatened with or subjected to physical violence if they did not comply with Appellants’ instructions. There was significant evidence at trial that several victims were either forcibly raped by Appellants or rendered so inebriated— often by force or threat of force — as to be functionally unconscious. In light of this evidence, a reasonable person with the same background and circumstances as the victims would have felt coerced and the verdict “would surely not have been different absent the” district court’s error in the sex trafficking instruction. See Sullivan, 508 U.S. at 280, 113 S.Ct. 2078 (emphasis omitted).
Finally, Appellants challenge the sentences imposed for both procedural and substantive unreasonableness. We review such challenges applying a “deferential abuse-of-discretion standard.” United States v. DeSilva, 613 F.3d 352, 356 (2d Cir.2010) (per curiam) (internal quotation marks omitted). To satisfy procedural review, a trial court may not impose a sentence greater than the statutory maximum, must “begin all sentencing proceedings by correctly calculating the applicable Guidelines range,” United States v. Dorvee, 616 F.3d 174, 180 (2d Cir.2010), and should make clear the basis for any enhancements imposed, United States v. Ahders, 622 F.3d 115, 119 (2d Cir.2010). If we determine that a sentence is procedurally unsound, we need not consider whether it was also substantively reasonable. United States v. Corsey, 723 F.3d 366, 377 (2d Cir.2013).
The Government concedes that certain of the sentences imposed exceeded the statutory maximum and thus constitute procedural error warranting remand as to those sentences. Gov’t Br. 162. However, there were additional procedural errors in the sentencing proceeding, including an incorrectly imposed mandatory minimum, and a full resentencing is warranted. Cf. United States v. Maldonado, 996 F.2d 598, 599 (2d Cir.1993) (per curiam) (“[W]hen a sentence has been vacated, the defendant is placed in the same position as if he had never been sentenced.”).
First, the district court erred in imposing a two-level “serious injury” enhancement for every victim under U.S.S.G. § 2A3.1(b)(4). The Presentence Report explicitly premised this enhancement on evidence that the victims were raped, and the Government relied on this evidence in defending the application of the enhancement over Appellants’ objection. Rivera App. 714-15. However, the application notes to the Guideline advise that “for purposes of this guideline, ‘serious bodily injury’ means conduct other than criminal sexual abuse, which already is taken into account in the base offense level.” U.S.S.G. § 2A3.1(b)(4) application note 1 (emphasis added). Serious bodily injury is otherwise defined as “injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ or mental faculty; or requiring medical intervention such as surgery, hospital *188 ization, or physical rehabilitation.” Id. § 1B1.1 application note 1(L). On remand, the district court should consider whether the record supports application of this enhancement as to any victim.
Next, the district court erred in applying an across-the-board four-level enhancement for an offense that involved aggravated sexual abuse as defined by 18 U.S.C. § 2241.[6] The Government concedes that the district court “did not describe in detail the facts of aggravated sexual abuse involving each and every victim” but argues that “there was significant evidence at the trial that several victims were either forcibly raped by defendants or rendered so inebriated — often by force or threat of force — as to be functionally ‘unconscious.’ ” Gov’t Br. 155-56. However, the district court was required to “fully state[] the reasons for the sentence imposed,” United States v. Bonilla, 618 F.3d 102, 111 (2d Cir.2010), and to make clear the basis for imposing the enhancement, Ahders, 622 F.3d at 123 (remanding for “further consideration and explanation of the sentence,” including a four-level enhancement). Its failure to do so requires remand. Because we vacate Appellants’ sentences and remand for a full resentencing, we decline to reach their arguments that the sentences imposed were substantively unreasonable. See Corsey, 723 F.3d at 377-78.
We close with a few words about the views of our dissenting colleague. The dissent presses for reversal of Appellants’ convictions based on the district court’s Rule 412 in limine decision.[7] The evidence the district court excluded was that prior to their involvement with Appellants, the “victims engaged in commercialized or similar sex without force, fraud or coercion.” Villaman App. 147. But the dissenter’s concern seems to be that Rivera and his co-defendants were denied their constitutional right to present a defense because evidence that a victim worked in a “sexualized environment” — defined broadly by the dissenter to include such nonsexual activities as “bartending, pole-dancing, and bouncing” — could be used to infer that the victims knew that their “waitress” job descriptions included prostitution. Dissenting Op., post, at 190. Appellants never argued this. But Rivera’s brief does lay out the core of his concern: “The central issue in the case was coercion: whether the women voluntarily engaged in commercial sexual acts, or whether they were forced to do so by the Defendants.” Rivera Br. 47. As discussed above, that evidence was not relevant under Rule 412 to whether those victims were later coerced into working as prostitutes. Thus, it would seem that the dissenter’s concerns are grounded in neither the evidence defendants sought to offer nor the arguments they have made.
The dissent expresses a concern that “precluding cross-examination of the victims about work as prostitutes prior to their employ by defendants prevented defendants from advancing their main defense: that the victims were not defrauded *189 into engaging in a commercial sex act, an element of the offense.” Dissenting Op., post, at 191. The district court’s ruling on Rule 412 did not prevent Appellants from using this defense. In fact, as discussed above, Rivera’s counsel made reference in his closing to the victims’ testimony that they had quit working at the bars but later returned, that they had visited the bars prior to their employment, or had recruited relatives or friends to work at the bars.
Lastly, we agree with our dissenting colleague that the sex trafficking charge was in error but clearly that error was harmless. The dissenter counters that “[a] properly instructed jury might find it implausible that the operator of such a[n illegal] business would contact the authorities for any reason: a chop shop does not call the police to report a supplier as a car thief.” Dissenting Op., post, at 195. The analogy takes the perspective of the person in the power position. It ignores the victim’s view of the world; the consequences of discovery to the out-of-status individual may be so grave that any risk of discovery by immigration officials justified cooperation.
The dissent’s harmless error analysis also ignores the plain facts of this case. Defendants knew of the immigration status of the victims and used that knowledge to craft their threats to coerce the victims to perform sexual acts against their will. Knowledge of “objective conditions that make the victim especially vulnerable (such as youth or immigration status) bear on whether the employee’s labor was obtained by forbidden means.” United States v. Bradley, 390 F.3d 145, 153 (1st Cir.2004) (internal quotation marks and alteration omitted), vacated on other grounds, 545 U.S. 1101, 125 S.Ct. 2543, 162 L.Ed.2d 271 (2005) (Booker remand). Moreover, the dissent ignores the substantial evidence of coercion through force as noted above. The threatened and actual abuse, in toto, was serious enough to cause reasonable people of the same background and in the same circumstances to feel coerced.
CONCLUSION
We have considered the remaining arguments presented by Appellants and find them to be without merit. For the reasons stated above, the judgments of conviction are AFFIRMED, the Appellants’ sentences are VACATED, .and the cases are REMANDED for a full resentencing.

. Rivera did not object to the Government's in limine motion to preclude cross-examination about the victims' other employment in a sexualized business. On appeal, Rivera contends that evidence of the victims’ sexual past should have been admissible.
We review Rivera’s argument for plain error. See Fed.R.Crim.P. 52(b); Jones v. United States, 527 U.S. 373, 388, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

. The jury charge on sex trafficking ultimately read:
The scheme, plan or pattern need not involve actual threats of serious harm, but may involve any other means, including deception or psychological coercion, used to cause the person to reasonably believe that she, her family, or any other person would suffer serious harm if she refused to continue providing sex acts.... If you find that any of the three prohibited means [force, fraud or coercion] I mentioned earlier was used, you must then determine whether such use was sufficient to cause one or more of the Jane Does ... to engage in a commercial sex act. In making that determination, you may consider the cumulative effect of the conduct of that defendant and the Jane Does. You may also consider the special vulnerabilities, if any, of the Jane Does. In this regard you may find that not all persons are of the same courage or firmness. You may consider, for example, the Jane Doe’s background, physical and mental condition, experience, education, socioeconomic status, and any inequalities between them and the defendant under consideration with respect to these considerations including their relative stations in life among other things.
Simply put, you may ask whether the particular Jane Doe was vulnerable in some way so that the actions of the defendant under consideration, even if not sufficient to compel another person to engage in a commercial sex act, were enough to compel that particular Jane Doe.... *184 If a particular Jane Doe was threatened with or suffered certain consequences in connection with the services that she purportedly rendered that overcame her will and compelled her service, that is sufficient to establish the third element of the offense of sex trafficking.
Villaman App. 796.

. Villaman also argues that Rule 412 is inapplicable to the forced labor counts. But the "labor” the victims were forced to provide was, in part, prostitution, and some of the means by which Appellants compelled the victims’ forced labor was through sexual assault and the threat of sexual assault. Thus, this was a "criminal proceeding involving alleged sexual misconduct.” Fed.R.Evid. 412(a).

. Unlike in Olden, 488 U.S. at 232-33, 109 S.Ct. 480, and Alvarez v. Ercole, 763 F.3d 223, 230 (2d Cir.2014), the district court here did not curtail all cross-examination as to issues of the victims’ credibility or whether they knowingly agreed to engage in prostitution. Rather, Judge Feuerstein imposed a reasonable limitation on a limited aspect of cross-examination. See Watson v. Greene, 640 F.3d 501, 510-12 (2d Cir.2011).

. Although the district court erred in instructing the jury on the sex trafficking counts, it properly instructed the jury on the reasonable person standard in its instructions on the forced labor charges.

. That statute criminalizes “knowingly causfing] another person to engage in a sexual act” by (1) using force or (2) threatening or placing that person in fear that any person will be subjected to death, serious bodily injury, or kidnapping. 18 U.S.C. § 2241(a). It also criminalizes acts of sexual abuse committed by: (1) rendering another person unconscious, (2) "administer[ing] to another person by force or threat of force, or without the knowledge or permission of that person, a drug, intoxicant, or other similar substance and thereby (A) substantially impair[ing] the ability of that other person to appraise or control conduct; and (B) engaging] in a sexual act with that other person.” Id. § 2241(b).

. Our colleague fails to point out that Rivera never objected to the government's motion.