United States v. Graham

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of September, two thousand seventeen.

PRESENT: DENNIS JACOBS,
         PIERRE N. LEVAL,
         REENA RAGGI,
                    Circuit Judges.

- - - - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,
         Appellee,

         -v.-                                    15-3703

KENNETH GRAHAM,
         Defendant-Appellant.
- - - - - - - - - - - - - - - - - - - -X

FOR APPELLANT:              ROBERT A. CULP; Garrison, NY.

FOR APPELLEE:               MONICA J. RICHARDS for James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York; Buffalo, NY.

1

Appeal from a judgment of the United States District Court for the Western District of New York (Arcara, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Kenneth Graham appeals from a judgment of conviction entered in the United States District Court for the Western District of New York (Arcara, J.) pursuant to jury verdict. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Graham was charged with three counts of sex trafficking in violation of 18 U.S.C. § 1591. Specifically, the indictment alleged sex trafficking by force, fraud, or coercion with respect to Victims 1 and 2 (in violation of § 1591(a) and (b)(1)); and sex trafficking of a minor with respect to Victims 2 and 3 (in violation of § 1591(a)(1) and (b)(2)). All three victims testified against Graham, minor Victim 3 by means of two-way closed-circuit television. After conviction on all three counts, Graham was sentenced to 30 years of incarceration (consecutive 15-year terms on Counts One and Two and a concurrent 10-year term on Count Three), restitution of $366,000, and forfeiture of $80,000.

Graham argues (1) insufficiency of evidence as to an effect on interstate commerce (Count One) and participation in a "venture" (as to all three counts); (2) constructive amendment as to Counts Two and Three; (3) erroneous jury instruction as to knowledge of causation; (4) abuse of discretion in allowing Victim 3 to testify remotely; (5) abuse of discretion in precluding evidence under Rule 412 of the Federal Rules of Evidence; and (6) abuse of discretion in denying a new trial based on a claim of ineffective assistance of counsel.

**1.** "We review challenges to the sufficiency of evidence de novo," while "view[ing] the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." United States v. Pierce, 785 F. 3d 832, 837-38 (2d Cir. 2015). "[T]he evidence must be viewed in conjunction, not in isolation," United States v. Persico, 645 F. 3d 85, 104 (2d Cir. 2011), and "[w]e will sustain the jury's verdict if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Pierce, 785 F.3d at 838 (internal quotation marks omitted).

3

We need not decide whether the evidence was sufficient to establish that Graham participated in a "venture." Section 1591(a) contains two subdivisions in the disjunctive--(a)(1) prohibits certain conduct with respect to victims of sex trafficking, and (a)(2) prohibits the receipt of financial or other benefits from "participation in a venture" that engages in the conduct prohibited by (a)(1). A violation of either subdivision therefore constitutes a violation of § 1591(a). The jury was instructed as to both subdivisions and returned special verdict sheets that indicate separate unanimous guilty verdicts as to each count under both (a)(1) and (a)(2). The question whether the evidence was sufficient to show a "venture" under (a)(2) is therefore of no consequence.

The evidence as to Count One (and all counts) was sufficient to establish that the violation was in and affecting interstate commerce. "[I]t is well established that the burden of proving a nexus to interstate commerce is minimal." United States v. Elias, 285 F.3d 183, 188 (2d Cir. 2002) (discussing interstate commerce nexus in context of the Hobbs Act). "Even a potential or subtle effect on commerce will suffice." Id. (internal quotation marks omitted). The conduct underlying Graham's

4

conviction was inherently commercial, and the government adduced evidence that its commission as to all three counts involved the use of internet advertisements, condoms, hotels, and rental cars.  Considering that evidence in its totality and in the light most favorable to the government, it is sufficient to establish that the violation as to each count occurred in and affecting interstate commerce.

**2.**  "To prevail on a constructive amendment claim, a defendant must demonstrate that the terms of the indictment are in effect altered by the . . . jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment."  United States v. D'Amelio, 683 F.3d 412, 416 (2d Cir. 2012) (internal quotation marks omitted).  We view "constructive amendment as a *per se* violation of the Grand Jury Clause requiring reversal," but we have "consistently permitted significant flexibility in proof, provided that the defendant was given *notice* of the *core of criminality* to be proven at trial."  Id. at 417 (footnote and internal quotation marks omitted).

5

Section 1591(a) prohibits the conduct described in (a)(1) and (a)(2) if it is committed while "knowing, or ... in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." Section 1591(c) provides that "[i]n a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person . . . the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years." Taken together, the effect of these provisions is that in § 1591 cases based on the victim's age, the government must prove knowledge or reckless disregard of the victim's age under (a)(2) but only a reasonable opportunity to observe the victim under (a)(1).

Graham argues that his indictment was constructively amended because the jury was instructed on § 1591(c) even though the indictment did not charge him under that subsection. Subsection (c), however, does not state a separate offense; it expressly refers to "prosecution[s] under subsection (a)(1)"

and it provides "an alternative to proving any mens rea with regard to the defendant's awareness of the victim's age." United States v. Robinson, 702 F.3d 22, 32 (2d Cir. 2012). Regardless, we need not here decide whether the indictment's failure to reference subsection (c) bears on the core of criminality charged because the jury returned separate verdicts of guilty under (a)(1) and (a)(2). Cf. D'Amelio, 683 F.3d at 417. It thus necessarily found that Graham knew or recklessly disregarded his victims' respective ages (which is necessary under (a)(2)), so the inclusion of the lesser "opportunity to observe" instruction in the charge cannot have altered the verdict.

**3.** Section 1591(a) prohibits certain conduct with respect to sex-trafficking victims committed while knowing or recklessly disregarding that force, fraud, or coercion "will be used to cause the person to engage in a commercial sex act," or when the victim is under 18 and is "caused to engage in a commercial sex act." Graham argues that the instruction allowed the jury to convict without finding knowledge of causation.

The district court, consistent with Sand's Modern Federal

Jury Instructions (2012), charged the jury to determine whether Graham "knew or was in reckless disregard of the fact that force, threats of force, fraud or coercion would be used with respect to" the victims and that they "would engage in a commercial sex act." App. 243–45. It is true that this formulation is not explicit about causation of the sex act. However, the district court referred to the requirement of causation elsewhere in the jury charge, including the definitions, and in its recitation of the indictment and of the statute itself. The statutory wording, including causation, was also repeated on the special verdict sheets, on which the jury recorded its verdict as to each count. App. 249–50. "[I]t is basic law that a jury charge should be examined in its entirety, not scrutinized strand-by-strand. We will reverse a jury verdict due to an erroneous instruction only if we are persuaded that the error was prejudicial or the charge was highly confusing." Time, Inc. v. Petersen Pub. Co. L.L.C., 173 F.3d 113, 119 (2d Cir. 1999) (internal citation and quotation marks omitted). In the full context of the entire jury charge, we conclude that the instruction on causation was sufficient.

4. In a proceeding involving an alleged offense against

8

a child, the district court may order, under certain circumstances and upon application, that the testimony of the child be taken by closed-circuit television.  18 U.S.C. § 3509(b)(1).  One such circumstance is that "[t]he child is unable to testify because of fear."  18 U.S.C. § 3509(b)(1)(B)(i).  The district court must support a ruling on the child's inability with factual findings on the record.  18 U.S.C. § 3509(b)(1)(C).

Moreover, to invoke a statutory procedure that forecloses in-person cross-examination, the district court must preserve "the essence of effective confrontation" guaranteed by the Confrontation Clause of the Sixth Amendment.  Maryland v. Craig, 497 U.S. 836, 857 (1990).  To satisfy the Sixth Amendment's constitutional requirements, the court must make "a proper finding of necessity," including that "the emotional distress suffered by the child witness in the presence of the defendant is more than ... mere nervousness or excitement or some reluctance to testify."  Id. at 856-57.  We review the district court's findings of fact for clear error.  United States v. Ledee, 762 F.3d 224, 228 (2d Cir. 2014).

9

The district court allowed Victim 3, who was 16 during the events in question and 17 when testifying, to testify by two-way closed-circuit television. The district court, on voir dire, found that she was "extremely nervous and uncomfortable and fearful," App. 121, and credited her statement that she was afraid of facing Graham in court. Id. These apprehensions of appearing for live testimony may fail to meet our demanding constitutional standard absent specific indicia of the emotional trauma the child witness would experience "not by [testimony in] the courtroom generally, but by the presence of the defendant." Craig, 497 U.S. at 856.

To examine these constitutional concerns more closely, we reviewed the psychiatric assessment of Victim 3's mental status submitted by the U.S. Attorney's office. This assessment reinforced the government's submission that the child witness would suffer specific psychiatric trauma and be unable to reasonably communicate if forced to testify in the live presence of the defendant. Id. ("[A] determination that the child witness will suffer 'serious emotional distress such that the child cannot reasonably communicate' clearly suffices to meet constitutional standards") (internal citations omitted). The

10

district court credited this psychiatric assessment in approving the government's motion.  App. 121.  In such a close case, a more complete record identifying particular findings on the mental status of the child witness would have been helpful.  However, viewing the record in its entirety including the psychiatric assessment, we cannot say the district court committed clear error in its findings of fact.  See Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985).

**5.**   The district court granted the government's motion to preclude evidence that Victims 1 and 3 worked as prostitutes before or apart from the conduct alleged in the indictment on the basis that "evidence offered to prove that a victim engaged in other sexual behavior" is generally inadmissible in a proceeding involving alleged sexual misconduct.  Fed. R. Evid. 412.  We review evidentiary decisions for abuse of discretion and will reverse only in instances of "manifest error."  United States v. Miller, 626 F.3d 682, 687–88 (2d Cir. 2010).

We cannot state that the district court's decision should be reversed for manifest error because Graham ultimately suffered no harm from this ruling.  See id. (In reviewing

11

evidentiary rulings for manifest error, we "affirm if the error was 'harmless'—that is, if we can conclude that the error did not affect substantial rights.") (citing Fed. R. Crim. P. 52(a)). The government brought out through the testimony of the victims that they had worked as prostitutes prior to their first contact with Graham.  Graham was free to cross-examine the victims on this point and argue to the jury that their prior willingness to engage in commercial sex rebuts the allegation that he coerced or forced them to engage in commercial sex.

**6.**  The district court denied Graham's post-trial motion, made through new counsel, for a new trial under Rule 33 of the Federal Rules of Criminal Procedure.  "We review a district court's denial of a Rule 33 motion deferentially and will reverse only for abuse of discretion."  United States v. Snype, 441 F.3d 119, 140 (2d Cir. 2006).

Graham argued that trial counsel was unconstitutionally ineffective, and swore in an affidavit that he would have accepted a plea offer if counsel would have told him that the victims' prior histories of prostitution would not be admissible.  The government submitted affidavits from Graham's

trial counsel and his trial counsel's law partner in which they affirmed that they both unsuccessfully sought to persuade Graham that he had no viable defense and should plead guilty. The district court credited counsel's version of events and found Graham's to be "self-serving, not credible, and contradictory to the rest of the record." Special App. 35. Graham provides no basis upon which to find an abuse of discretion in the district court's conclusion.

Accordingly, and finding no merit in appellant's other arguments, we hereby **AFFIRM** the judgment of the district court.

```
                              FOR THE COURT:
                              CATHERINE O'HAGAN WOLFE, CLERK
```