*United States v. Shine*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of March, two thousand twenty-two.

PRESENT:
>    BARRINGTON D. PARKER,
>    SUSAN L. CARNEY,
>    BETH ROBINSON,
>         *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

>    *Appellee,*

>         v.                                                          No. 20-314

VALENTINO SHINE, SR.,

>    *Defendant-Appellant,*

JESSE LEWIS, BRITTANY WIEAND,

>    *Defendants.*[*]

_____

FOR APPELLANT:                         MICHAEL J. STACHOWSKI, Michael J.
                                       Stachowski P.C., Buffalo, NY.

---

[*] The Clerk of Court is directed to amend the case caption to conform to the above.

FOR APPELLEE:                                    KATHERINE A. GREGORY, Assistant
                                                 United States Attorney, *for* Trini E. Ross,
                                                 United States Attorney for the Western
                                                 District of New York, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on January 21, 2020, is **AFFIRMED**.

Defendant-Appellant Valentino Shine, Sr., appeals from a judgment of conviction entered against him following his September 2019 jury trial and conviction for narcotics offenses, *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 846, and 856(a)(1), and sex trafficking and conspiracy to commit sex trafficking, *see* 18 U.S.C. §§ 1591(a), 1591(b)(1), and 1594(c). We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

1.    Sufficiency of the evidence supporting sex trafficking conviction

Shine first argues that the record evidence supporting his sex trafficking conviction was insufficient to establish three elements of the offenses: (1) that his conduct had an effect on interstate commerce; (2) that he participated in a sex trafficking "venture," as defined in 18 U.S.C. § 1591(e)(6); and (3) that he coerced victims to engage in commercial sex.[1] On

---

[1] As relevant here, a person is guilty of sex trafficking in violation of 18 U.S.C. § 1591(a) if he or she knowingly:

> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
>> knowing, or, . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has

appeal from a jury conviction, "[w]e review challenges to the sufficiency of evidence *de novo*," while "view[ing] the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *United States v. Pierce*, 785 F.3d 832, 837–38 (2d Cir. 2015) (internal quotation marks omitted). When assessing a sufficiency challenge, "we consider the evidence presented 'in its totality, not in isolation.'" *United States v. Anderson*, 747 F.3d 51, 59 (2d Cir. 2014) (quoting *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008)). The standard for overturning a jury verdict on sufficiency grounds is high: "We will sustain the jury's verdict if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Pierce*, 785 F.3d at 838 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)).

Upon review, we conclude that Shine's sufficiency challenge with respect to his sex trafficking convictions fails.

### a. Nexus to interstate commerce

Shine contends that the government offered insufficient evidence that his conduct affected interstate commerce. "[I]t is well established that the burden of proving a nexus to interstate commerce is minimal." *United States v. Elias*, 285 F.3d 183, 188 (2d Cir. 2002). At trial, the government presented extensive evidence that Shine's conduct affected interstate commerce. The jury heard testimony that Shine and a codefendant, Brittany Wieand, instructed victims to post materials on Backpage, a website that he used to advertise the availability of the women for commercial sex. We have "routinely recognized" the internet "as an instrumentality of interstate commerce." *United States v. Le*, 902 F.3d 104, 112 (2d Cir. 2018). The government also presented evidence that Shine used debit cards and paid for hotels rooms, cell phones, and condoms to support his sex trafficking operation, actions that—especially considered together—are ordinarily considered commercial and affecting interstate commerce. *See United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007) (A

---

not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a)(1)–(2).

defendant's "use of hotels that served interstate travelers and distribution of condoms that traveled in interstate commerce are further evidence that [his] conduct substantially affected interstate commerce."); *see also United States v. Graham*, 707 F. App'x 23, 26 (2d Cir. 2017) (summary order) (finding interstate commerce element satisfied since a defendant's conduct was "inherently commercial" and defendant used internet advertisements, condoms, hotels, and rental cars to facilitate sex trafficking).

Shine advances no persuasive argument that this showing was inadequate to support the interstate commerce element of the crime. We therefore consider this element of the crime to have been satisfactorily proven.

b.    Sex trafficking "venture"

Next, Shine submits that the government adduced insufficient evidence to establish that he participated in a sex trafficking "venture" within the meaning of section 1591(a)(2). A defendant may be convicted of sex trafficking under either of two subdivisions of section 1591(a). Subdivision (a)(1) prohibits certain conduct with respect to victims of sex trafficking, and subdivision (a)(2) prohibits the receipt of financial or other benefits from "participation in a venture" that engages in the conduct prohibited by (a)(1). 18 U.S.C. § 1591(a)(1)–(2). The record contains sufficient evidence to support a conviction under section 1591(a)(1). We review the record briefly as to subdivision (a)(2) as well, however, to allay any doubt.

Section 1591 defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6). Caselaw suggests that the government can establish a venture by showing financial benefits accruing to at least one of two associated individuals engaging in the scheme. *See United States v. Flanders*, 752 F.3d 1317, 1331 (11th Cir. 2014) ("The jury could infer that Flanders benefitted from the venture when he accepted 'auditioning fees' from the victims."). Here, the government introduced sufficient evidence to establish that Shine and his codefendant Wieand participated in a sex trafficking venture from which Shine benefitted financially. Victims testified that Shine worked closely with Wieand to post advertisements to Backpage, and that Shine retained the profits earned from the prostitution of his and Wieand's victims. No more is required.

4

c. Allegedly voluntary participation by the victims

Shine also asserts that the evidence reflects that his victims "voluntarily" participated in his "escort service," Appellant's Br. at 18, and is insufficient to establish that he used "force, fraud, [or] coercion" to "cause [a] person to engage in a commercial sex act" within the meaning of section 1591(a). The record is inconsistent with that conclusion and adequately supports the jury's determination otherwise.

The trial record contains ample testimony in support of the district court's summary, on review of Shine's Rule 29 motion, that Shine "exploited victims' fear of homelessness, withdrawal, and violence to compel them to engage in commercial sex acts when they otherwise would not have done so." *United States v. Shine*, No. 17-CR-28-FPG-JJM, 2019 WL 6838623, at *8 (W.D.N.Y. Dec. 16, 2019). For example, KZ testified that the amount of crack cocaine that Shine gave her depended on his mood and "how much money was coming in" through her prostitution. App'x at 1029. KY testified that if she did not "produce money" she was denied drugs and got "dope sick," which she described as "[r]etching stomach, pains in the stomach, throwing up, nausea, every bone in your body hurts, you can barely move, you can barely breathe, you'll do just about anything to get a bag of heroin." *Id.* at 420. When she purchased drugs on her own, Shine yelled at her, and she also testified that he punched her in the side of the head. This testimony sufficiently supports the conclusion that Shine coerced his victims, within the meaning of section 1591, to engage in commercial sex.

2. Jury instructions

Shine next faults the district court for its instruction that "reasonable fear of severe withdrawal symptoms can meet the definition of a serious harm," such as is necessary under section 1591 to establish unlawful coercion.[2] App'x at 1393.

---

[2] Section 1591(e)(2) defines "coercion" as:

(A) threats of serious harm to or physical restraint against any person;

We review the propriety of a jury instruction *de novo* and "will reverse only where the charge, viewed as a whole, demonstrates prejudicial error." *United States v. Rivera*, 799 F.3d 180, 186 (2d Cir. 2015) (internal quotation marks omitted). Because Shine did not object at trial, we review the district court's instructions for plain error on appeal. An error is "plain" and may warrant disturbing a verdict if:

> (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks and brackets omitted). Shine submits that that neither Congress nor our Court have previously ruled that threat of withdrawal symptoms may constitute a threat of "serious harm" under section 1591, and that the district court's instruction invited the jury to convict him based on his victims' drug use and not on anything Shine himself did.

We reject that assertion. The district court's charge was consistent with our directive in *Rivera*, where we explained that a proper instruction regarding coercion "permits the jury to consider the particular vulnerabilities of a person in the victim's position but also requires that her acquiescence be objectively reasonable under the circumstances." 799 F.3d at 186–87 (citing 2–47A Modern Federal Jury Instructions—Criminal P 47A.03, Instruction 47A–21). As discussed above, the evidence at trial established that Shine's victims shared a reasonable fear of suffering painful withdrawal symptoms if they did not perform commercial sex acts as directed by Shine.[3] We conclude that these symptoms constitute

---

(B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

(C) the abuse or threatened abuse of law or the legal process.

18 U.S.C. § 1591(e)(2).

[3] As discussed above, KY testified that if she did not "produce money" she was denied drugs and suffered severe withdrawal symptoms. App'x at 420.

"serious harm" under section 1591, and that it was objectively reasonable of them to respond to the perceived threat of such harm. 18 U.S.C. § 1591(e)(2). The district court did not commit an error, let alone a plain error, in its jury instructions.

3.     <u>Admission of expert testimony</u>

Finally, Shine contends that the district court abused its discretion by allowing testimony from Dr. David Dietz and FBI Special Agent Jennifer Amo. Federal Rule of Evidence 702(a) allows admission of the testimony of a witness "who is qualified as an expert by knowledge, skill, experience, training, or education." We review a district court's decision to admit or exclude expert testimony for abuse of discretion. *See United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004). "A district court's determination with respect to the admission of expert testimony is not an abuse of discretion unless it is manifestly erroneous." *Id.* (internal quotation marks omitted).

a.     <u>Testimony of Dr. Dietz</u>

Shine argues that the district court erred in admitting Dr. Dietz's testimony concerning drug addiction and withdrawal symptoms because Dr. Dietz did not examine, interview, or test any of the victims. Shine further contends that Dr. Dietz's testimony concerning the effects of drugs on the brain misled the jury. His argument lacks merit.

Rule 702 does not require an expert to personally examine the witnesses in a case, so long as the expert's opinion is "based on sufficient facts or data," the "testimony is the product of reliable principles and methods," and the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Crucially, Dr. Dietz's testimony on direct examination was of a general nature and did not purport to present a view of any of the victims in this case. In addition, defense counsel's cross-examination of Dr. Dietz elicited the fact that he did not examine any of the victim-witnesses; the jury was fully informed on this point. We also find no indication that Dr. Dietz's testimony misled the jury or that its probative value was substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403. We identify no error in the district court's ruling.

b.     Testimony of Special Agent Amo

Shine also challenges the district court's admission of Special Agent Amo's testimony. He challenges her qualifications as an expert and argues secondarily that her testimony was speculative and within the grasp of an average juror, making it error for the district court to have admitted it.

We disagree. Amo testified that she had 13 years of experience on the Human Trafficking Task Force in Buffalo and had participated in 40 to 50 human trafficking investigations involving adult victims. She testified generally about common practices and methods used in the sex trafficking industry. As discussed above, the fact that Special Agent Amo did not interview each victim does not provide a basis to exclude her testimony. Although Shine argues that the Special Agent's testimony was unnecessary because it was within the grasp of an average juror, we conclude that the district court acted as a "vigilant gatekeeper[] of [Special Agent Amo's] expert testimony," *United States v. Dukagjini*, 326 F.3d 45, 56 (2d Cir. 2003), limiting her exposition to explaining common practices "regarding the business of prostitution generally," App'x at 1465. *See also United States v. Young*, 955 F.3d 608, 615 (7th Cir. 2020) (Barrett, *J.*) (concluding that expert testimony that "defined key terms and explained common sex-trafficking dynamics" was "reliable and helpful for the jury"). We therefore reject Shine's evidentiary challenges.

\* \* \*

We have considered Shine's remaining arguments and find in them no basis for reversal. The judgment of the district court is **AFFIRMED.**

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

8