22-2780-cr
*United States v. Rivera*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of June, two thousand twenty-four.

Present:

RICHARD C. WESLEY,
GERARD E. LYNCH,
EUNICE C. LEE,
     *Circuit Judges.*

───────────────────────────────────────

UNITED STATES OF AMERICA,

          *Appellee,*

          v.                                                                    No. 22-2780-cr

JUSTIN RIVERA,

          *Defendant-Appellant.*[*]

───────────────────────────────────────

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

For Appellee:                                          DANIEL H. WOLF (Thomas S. Burnett, Stephen J. Ritchin, *on the brief*), Assistant United States Attorneys, Of Counsel, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

For Defendant-Appellant:                          PETER J. TOMAO, Law Office of Peter J. Tomao, Garden City, NY.

Appeal from an October 13, 2022 judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Justin Rivera ("Appellant") appeals a judgment of conviction entered following a jury trial in which he was found guilty of a single count of conspiracy to commit sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1594(c). He was sentenced to 252 months' imprisonment, followed by five years' supervised release. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

**I.     Sufficiency of the Evidence**

Appellant first argues that the district court erred in denying his motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 and his motion for a new trial under Rule 33 based on insufficient evidence. Where, as here, claims of insufficiency of the evidence are preserved below, we review those claims *de novo*. *United States v. Capers*, 20 F.4th 105, 113 (2d Cir. 2021). "[A] defendant challenging the sufficiency of the evidence that led to his conviction

at trial bears a heavy burden, as the standard of review is exceedingly deferential." *United States v. Coplan*, 703 F.3d 46, 62 (2d Cir. 2012) (internal quotation marks and citations omitted). This Court "must sustain the jury's verdict if, crediting every inference that could have been drawn in the government's favor and viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Capers*, 20 F.4th at 113 (internal quotation marks omitted and alterations adopted). Ultimately, "[a] judgment of acquittal is warranted only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017) (quoting *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013)).

In challenging the sufficiency of the evidence, Appellant argues (1) that the government failed to show that there was a specific agreement between Appellant and his co-conspirator Lorenzo Randall, and (2) that there was insufficient evidence to support the jury's finding of venue in the Southern District of New York.

Appellant maintains that while he and Randall each operated a commercial sex business, their operations were separate and even competing. However, "[a] conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *United States v. Svoboda*, 347 F.3d 471, 477 (2d Cir. 2003) (quoting *United States v. Samaria,* 239 F.3d 228, 234 (2d Cir. 2001)); *United States v. Henry*, 325 F.3d 93, 105 (2d Cir. 2003) ("[E]vidence of a financial stake in the venture is not essential to show that the defendant intended to facilitate the unlawful objective of the conspiracy.") (quoting *United States v. Isabel*, 945 F.2d 1193, 1203 (1st Cir.1991)).

3

Here, the evidence was sufficient to establish that there was an understanding between Appellant and Randall to engage in a sex trafficking conspiracy. Appellant contends that they trafficked different women as part of separate businesses and that *his* trafficking was limited only to N.R.[2], a woman named in both Randall and Appellant's indictments. The evidence, however, showed that Appellant and Randall helped each other's sex trafficking in multiple ways and that both men trafficked N.R. and D.P., the other woman named in each of their indictments.

At trial, D.P., the woman more closely linked to Randall, testified that Randall referred to Appellant as "the shooter"—the person who would "handle[] it" if an issue arose with clients purchasing sex services. App'x at 604 (quoting Tr. 228). D.P. also testified that Appellant stood armed as guard outside a motel room while Randall physically abused D.P., and that on another occasion Appellant brandished a gun to scare away D.P.'s family when they tried to bring her home. D.P. testified that after she was able to return home, Appellant and Randall tried to persuade her to return and continue her sex work for Randall. Meanwhile, Appellant sought advice from Randall on how to maximize profits and control N.R. N.R. also testified that after Appellant was arrested and incarcerated, Randall acted as Appellant's agent, driving N.R. to meet with clients and telling her that he "wouldn't do anything" in connection with N.R.'s sex work "without . . . [Appellant's] permission." App'x at 606 (quoting Tr. 1255–58, 1269–71). Thus, the jury was presented with sufficient evidence to conclude beyond a reasonable doubt that Appellant had a "tacit understanding" with Randall to traffic the two women. *Svoboda*, 347 F.3d at 477.

---

[2] Although the parties and the district court referred to the women by their full names, we refer to them here only by their initials.

4

We are also unpersuaded by Appellant's argument that there was insufficient evidence in the record to support the jury's venue finding. As the district court noted below, while most of the evidence involved conduct in the Eastern District of New York, venue is not limited to the district where the greatest amount of relevant conduct occurred. Appellant's contention that venue was lacking because the government did not present any evidence at trial showing that he performed any acts within the Southern District of New York is simply wrong. Rather, venue for a conspiracy charge is proper in any district in which an overt act in furtherance of the conspiracy was committed by any conspirator. *United States v. Tzolov*, 642 F.3d 314, 319–20 (2d Cir. 2011). The record details multiple instances that provided a basis for venue in the Southern District of New York—including D.P.'s testimony that Randall took her to meet clients in Manhattan and the Bronx.

## II. Evidentiary Rulings

Next, Appellant argues that three of the district court's evidentiary rulings denied him a fair trial. He maintains that the district court erred in 1) admitting expert opinion testimony on traumatic bonding; 2) limiting questions about N.R.'s previous history as a sex worker; and 3) admitting evidence that N.R. was once kidnapped, even though that incident was unrelated to Appellant's sex trafficking charge. We review evidentiary rulings for abuse of discretion. *United States v. Ho*, 984 F.3d 191, 207 (2d Cir. 2020).

First, we are not persuaded by Appellant's challenge to the district court's admission of the government's expert testimony about trauma bonding. This Court has held that a "trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and [their] action

5

is to be sustained unless manifestly erroneous." *United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985). The district court's determination that Dr. Raghavan's expert testimony was sufficiently reliable under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and would help jurors understand the background psychological concepts at play—including trauma bonding and why a sex trafficking victim might express affection for their trafficker—was not manifestly erroneous. Appellant argues that the expert's testimony should not have been allowed because her research focused on immigrant, teenage sex workers, and therefore could not be reliably applied to women such as D.P. and N.R., who are not within either demographic. But as the district court noted below, studies have found trauma bonding exists in individuals like D.P. and N.R., and the defense cited no study showing that this phenomenon is limited to minors or immigrant women.

Appellant also claims Dr. Raghavan's underlying research suffers from several deficiencies, including an unreliably small sample size and selection bias. But these arguments go to the weight rather than admissibility of the testimony, and the jury was entitled to accept or reject Dr. Raghavan's testimony. *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("Although expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith . . . , other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony.") (internal quotation marks and citations omitted).

Finally, we reject Appellant's claim that Dr. Raghavan's testimony amounted to impermissible witness bolstering. *See Nimely v. City of New York*, 414 F.3d 381, 395–96 (2d Cir. 2005) (an expert cannot "comment directly, under the guise of expert opinion, on the credibility

of trial testimony from" specific fact witnesses). Dr. Raghavan did not directly opine on the credibility of D.P. or N.R.'s testimony, but rather provided general testimony about the dynamics of sex trafficking relationships. Courts have routinely held that such background testimony is not impermissible bolstering. *See*, *e.g.*, *United States v. Johnson*, 860 F.3d 1133, 1141 (8th Cir. 2017) (explaining that an expert may testify "about how individuals generally react to sexual abuse—[which] helps jurors evaluate the alleged victim's behavior . . . [s]o long as the expert does not impermissibly 'vouch' for the victim").

We are also not persuaded that the district court erred in limiting questions about N.R.'s history as a sex worker, which Appellant claimed was relevant to the jury's determination of whether Appellant coerced N.R. to engage in sex work. Under Federal Rule of Evidence 412(a), in cases "involving alleged sexual misconduct," "evidence offered to prove that a victim engaged in other sexual behavior" and "evidence offered to prove a victim's sexual predisposition" is prohibited. This rule is subject to several narrow exceptions, including when "exclusion would violate the defendant's constitutional rights." Fed. R. Evid. 412(b)(1)(C). That exception, however, does not permit defendants to argue "that because the victim previously consented to have sex [with persons other than the defendant]—for love or money—her claims of coercion should not be believed." *United States v. Rivera*, 799 F.3d 180, 185 (2d Cir. 2015). In other words, evidence of an individual's prior acts of sex work is irrelevant to whether that individual was later coerced into such work. *Id.* After hearing arguments, the district court allowed Appellant to pose a limited set of questions related to N.R.'s sex work independent of Appellant during the time of the charged conspiracy, but barred questions related to the time period before the charged conspiracy. That ruling by the district court was not an abuse of discretion, as it

7

represented a reasonable balancing of the probative value of the evidence Appellant sought to introduce versus the substantial risk of a Rule 412 violation.

Finally, Appellant argues that the district court abused its discretion by admitting evidence of N.R.'s kidnapping by a group of people who were trying to assault Appellant, as this incident was not related to Appellant's sex trafficking. But as the district court mentioned at sentencing, Appellant's efforts to return N.R. to his employ after the kidnapping "underscored the extent of [Appellant's] control over her." App'x at 692. Admitting this evidence fell within the district court's discretion, and there was no unfair prejudice, as it was established during trial that Appellant was not the perpetrator of the kidnapping but was an intended target alongside N.R.

**III.    Sentencing**

Appellant contends that the district court procedurally and substantively erred in sentencing him to 252 months' imprisonment. We review a district court's imposition of a sentence under a "deferential abuse-of-discretion standard." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). Procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. However, when "the record indicates clearly that the district court would have imposed the same sentence in any event, [a procedural] error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) (internal quotation marks omitted).

Appellate review for substantive reasonableness "provide[s] a backstop for those few cases

that . . . would . . . damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009). We "set aside a district court's substantive determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. Perez-Frias*, 636 F.3d 39, 42 (2d Cir. 2011) (internal quotation marks omitted).

Appellant first argues that his 252-month sentence was procedurally unreasonable because the district court erroneously applied U.S.S.G. § 2G1.1(a)(1) instead of U.S.S.G. § 2G1.1(a)(2), arriving at a Guidelines base offense level of 34 rather than 14. We need not decide whether the district court erred in calculating Appellant's offense level because the district court explicitly stated that it would have imposed the exact same sentence even if it had adopted Appellant's view of the base offense level. Given that there exists an "alternative independent ground for the challenged sentence," any potential sentencing error would be harmless. *Cavera*, 550 F.3d at 197; *see also Jass*, 569 F.3d at 68 (explaining that error may be deemed harmless if the record shows that the district court would have imposed the same sentence irrespective of the Guidelines range).

Appellant also argues substantive unreasonableness based on his sentence being lengthier than that of one of his co-defendants—as well as others sentenced for similar conduct—resulting in unwarranted sentencing disparities. However, the district court explained at length why the Section 3553(a) factors warranted the sentence it imposed for Appellant in comparison to others convicted of similar conduct, including Appellant's obstruction of justice even after his conviction, his record of violent re-offenses while on parole, and his history of assaulting others. According

9

to the district court, these factors made him a "clear and present danger to society." App'x at 713. In any case, Appellant's term of incarceration is nine years below the bottom of the Guidelines range, and it is "difficult to find that a below-Guidelines sentence is [substantively] unreasonable." *Perez-Frias*, 636 F.3d at 43.

### IV.    Restitution Order

Finally, Appellant argues that the district court erred in ordering Appellant to pay N.R. and D.P. $86,000 in restitution pursuant to 18 U.S.C. § 1593, the restitution provision of the Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, § 112, 114 Stat. 1464 (2000). The statute requires restitution of the full amount of victims' losses, including "the greater of the gross income or value to the defendant of the victim's services or labor." 18 U.S.C. § 1593(b)(3). Generally, "[w]e review awards of restitution for abuse of discretion." *United States v. Desnoyers*, 708 F.3d 378, 389 (2d Cir. 2013).

Appellant argues that the restitution order was improper because it required him to pay for the "unlawful work" of commercial sex. Appellant's Br. at 72. That argument has been rejected in other cases, which have explained that "the express terms of 18 U.S.C. § 1593 require that the victims in this case, *i.e.*, persons who engaged in commercial sex acts within the meaning of 18 U.S.C. § 1591, receive restitution, notwithstanding that their earnings came from illegal conduct." *United States v. Mammedov*, 304 F. App'x 922, 927 (2d Cir. 2008) (summary order); *see also United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1164 (9th Cir. 2010) ("[T]he Trafficking [Victims Protection] Act mandates restitution that includes a defendant's ill-gotten gains.").

*                    *                    *

We have considered Appellant's remaining arguments and find them to be without merit.

10

Accordingly, we **AFFIRM** the judgment of conviction.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11