RENDERED: MARCH 14, 2019
TO BE PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$

2017-SC-000343-MR

FINAL

DATE 4/4/19 Km Redmon, DC

WILLIE WARD                                                          APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.              HONORABLE ANN BAILEY SMITH, JUDGE
NO. 14-CR-002203

COMMONWEALTH OF KENTUCKY                                             APPELLEE

## OPINION OF THE COURT BY JUSTICE HUGHES

## AFFIRMING

Willie Roger Ward appeals as a matter of right from the Jefferson Circuit Court judgment convicting him of first-degree sodomy, possession of a handgun by a convicted felon, and being a persistent felony offender (PFO) in the first degree. Ward was sentenced to twenty-five years for sodomy and fifteen years for possession of a handgun, with the sentences running consecutively for a total sentence of forty years. On appeal, Ward raises several evidentiary and procedural issues. Finding no error, we affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

At trial, both Ward and the seventeen-year-old victim, S.R., testified about the events that transpired and provided varying accounts of what happened.

In the early morning hours of August 18, 2014, Ward was driving alone in downtown Louisville and saw S.R. by a bus stop. S.R. testified that Ward stopped her, while he stated that S.R. waved to him. Ward offered her a ride, and she informed him that she did not have anywhere to go, but he told her they could ride around. The two drove around for a little while. According to S.R., Ward asked her if she would perform oral sex on him for fifteen dollars, and she declined. Ward alleged that S.R. brought up the topic of oral sex and directed him to a church parking lot. According to S.R., Ward told her that he lived near the church.

At approximately 3:57 a.m., someone who identified himself only as "Richard" called 911. Richard told the 911 operator that he saw a car sitting in a church parking lot for fifteen minutes with its lights off. He lived across the street from the parking lot and provided a general description of the vehicle he was observing. He stated, "I don't know who it is, they got their lights off . . . they do turn a lot of tricks in this lot so that might be what it is."

S.R. testified that after they parked, they talked for a few minutes and then, suddenly, Ward had his pants down and she saw a gun. She stated that he put the gun to her cheek and her phone fell from her lap to the floorboard. He threatened to "put a hot one" in her and push her out of the car. S.R. understood this to mean that he was going to shoot her if she did not comply. S.R. started to perform oral sex on Ward, and within five minutes, she noticed the red and blue lights of the police car and sat up.

Ward testified to a different sequence of events, denying that he forced S.R. to perform oral sex. He stated that while he was riding around collecting salvage to sell to the junkyard, he noticed S.R. waving to him. He asked if she needed a ride, and she said "yes." He stated that a conversation about oral sex came about at some point after they were driving around for twenty to thirty minutes. He stated that S.R. directed him to the church parking lot. Ward denied telling S.R. that he lived near the church but acknowledged that his uncle lived nearby. Ward testified that S.R. wanted a place to shower and sleep in exchange for sex, and that the oral sex was consensual.

At trial, Ward claimed that he tried to start the car and drive away afterwards but could not get his foot to press down on the pedal because something was in the way. Due to a surgery, he was wearing a medical boot at the time and needed a cane to walk. He stated that S.R. moved his leg over and went down to the floorboard to move whatever was keeping his foot from pressing the pedal, then sat back up when the police arrived. Ward testified that he did not know where S.R. placed the item once she moved it.

One of the officers testified that he believed he was dispatched to the parking lot to investigate possible prostitution. When the officers arrived, they asked for identification and for Ward and S.R. to exit the vehicle. After running a quick search based on the information provided, the officer immediately learned that Ward was a convicted sex offender. The officer called a detective with the sex crimes unit to see whether S.R., who was seventeen years old at the time, could be in Ward's presence given his sex offender status. The

3

detective stated that without more information, she could not say whether a crime had occurred.

While one officer went to perform the identification search, S.R. and Ward were separated, with S.R. standing toward the rear of the vehicle with the other officer. S.R. disclosed to that officer that Ward forced her to perform an act. The officers then contacted the sex crimes detective again, and she arrived at the scene shortly thereafter. The detective interviewed S.R. and digitally recorded her statement and also conferred with the officers to make sure S.R.'s statement was similar to what she initially disclosed. S.R. told the detective that she had engaged in prostitution previously, but she was not prostituting herself that night with Ward.

After taking S.R.'s statement, the detective arrested Ward. She searched him, then placed him in handcuffs in the back of the police car, while she searched his vehicle to locate the firearm S.R. claimed Ward had used to threaten her. The firearm was located immediately under the driver's seat.

Ward's trial was trifurcated. At the end of the first phase, the jury found him guilty of first-degree sodomy, and at the close of the second phase, the jury found him guilty of possession of a handgun by a convicted felon. Finally, at the close of the third phase, the jury found Ward guilty of being a first-degree persistent felony offender (PFO), enhancing the recommended sentences from the first two phases. Consistent with the jury's recommendation, the trial court entered a judgment sentencing Ward to twenty-five years for sodomy and

4

fifteen years for possession of a handgun, to run consecutively for a total of forty years.

## ANALYSIS

On appeal, Ward argues that the trial court erred: (1) by not suppressing the handgun and S.R.'s testimony; (2) by improperly applying the protection of the Rape Shield Law to exclude evidence that S.R. had performed acts of prostitution in her past; (3) by allowing evidence that S.R. was seventeen at the time of the charged offense; (4) by ruling that the admission of evidence of S.R.'s age at the time of the offense did not open the door to evidence of S.R.'s prior prostitution; (5) by not allowing Ward to stipulate in the second phase of the trial that he was a convicted felon; and (6) by not severing Ward's possession of a handgun by a convicted felon charge for separate trial. Additional facts will be presented as necessary.

### I.   The trial court did not err in denying Ward's motion to suppress the handgun or S.R.'s testimony.

Ward moved to suppress the handgun and S.R.'s testimony on the grounds the evidence was obtained as a result of an illegal stop and search. The trial court denied the motion, including the following findings in its opinion and order:

> According to [the detective's] testimony, the Defendant was placed under arrest, handcuffed, and then seated in the back of a police car for transport. [The detective] searched the defendant's vehicle finding a firearm under the driver's seat. The Defendant seeks to have this evidence suppressed arguing that the "stop" was based on a 911 call which was uncorroborated and that the warrantless search was illegal because the Defendant was secured in the backseat of a police car at the time the search was made.

5

The testimony before the Court is that the vehicle was parked in the church parking lot at 4:04 a.m. when Off. Drury approached the car. Officer Drury saw two people in the car and, upon questioning them about their presence, learned their identities and quickly ascertained that the Defendant was a registered sex offender and the other occupant was a juvenile female. Shortly thereafter the seventeen year old told Off. Drury that she was forced at gunpoint to perform oral sex on the Defendant. This brief detention was reasonable under the circumstances and does not invalidate a subsequent search of the vehicle. . . . In the case before this Court the police were notified of a suspicious car parked in a church parking lot at approximately 4:00 a.m. When Officer Drury arrives, he sees the Defendant's parked [sic] in the church parking lot with two individuals inside. There was no arrest made or subsequent search of the car conducted based on the 911 call. It wasn't until the seventeen year old made her accusation that the Defendant was placed under arrest and the car searched for evidence of the crime that the seventeen year old reported.

On appeal, Ward argues that the trial court erred in denying his motion to suppress the gun and S.R.'s testimony. More specifically, Ward argues that (1) he was seized; (2) the police lacked reasonable suspicion; (3) the "Richard" 911 call was an anonymous tip that was uncorroborated; and (4) S.R.'s testimony was tainted and should have been suppressed.

Appellate review of a suppression decision is two-fold. First, "[w]e review the trial court's factual findings for clear error, and deem conclusive the trial court's factual findings if supported by substantial evidence. The trial court's application of the law to the facts we review de novo." *Williams v. Commonwealth*, 364 S.W.3d 65, 68 (Ky. 2011).

In the seminal case, *Terry v. Ohio*, the Supreme Court held that police may briefly detain someone for investigative purposes if "the police officer [can]

6

point to specific and articulable facts" which lead him to reasonably conclude "that criminal activity may be afoot." 392 U.S. 1, 21 (1968). In Ward's case, the police officers conducted a *Terry* stop based on a 911 tip about a suspicious vehicle parked in a church parking lot at 4:00 a.m. In order to detain Ward for investigative purposes, the officers needed reasonable suspicion that criminal activity was afoot supported by articulable facts.

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). When the officers approached and asked Ward and S.R. to step out of the car, Ward was not free to leave and thus was subject to an investigatory stop or seizure. *Henson v. Commonwealth*, 245 S.W.3d 745, 748 (Ky. 2008). In assessing whether the officer at that point had "a reasonable suspicion, based on objective and articulable facts, that [Ward] was engaged in criminal activity," *id.*, courts consider the totality of the circumstances to determine whether there is a probability of criminal conduct, rather than a certainty. *United States v. Cortez*, 449 U.S. 411, 419 (1981). Here, the trial court found the detention was reasonable and we agree; the totality of the circumstances provided reasonable and articulable suspicion that criminal activity was afoot.

The semi-anonymous 911 tip from Richard alerted police to possible criminal activity in the church parking lot. Although Richard did not provide much identifying information about himself to the 911 operator, he stated his

7

first name and told police that he lived across from the church parking lot, indicating he likely could be traced either by the phone number he used to make the tip or visiting the residences with a view of the church parking lot. Richard also described the car that was parked in the lot for at least fifteen minutes with its lights off as resembling "one of those old police cars." He further offered that "they turn a lot of tricks" in the church parking lot, indicating that he knew the area and that criminal activity is not uncommon. Given the information he provided, the tip was not completely anonymous.

Although the tip did not provide Ward's name or reflect specific knowledge that Ward was engaging in criminal activity, Richard's tip was sufficiently corroborated when the police arrived on the scene. Following the lead from the 911 tip, the police officers went to the church parking lot where they found a car as described.[1] Upon entering the lot, police initially saw only Ward sitting in the driver's seat, but by the time the officers got closer, they noticed there were actually two people in the vehicle, with S.R. suddenly appearing in the passenger's seat. After performing a quick background check, the officers learned that fifty-one-year-old Ward was a registered sex offender, who was sitting in a parked car during early morning hours with a young woman appearing to be underage.

While presence in a high-crime area alone is insufficient to justify a *Terry* stop, it can be considered as a factor in determining whether to stop an

---

[1] Photos of the vehicle reveal a four-door sedan that is indeed similar to the old traditional police car that Richard referenced.

individual. *Strange v. Commonwealth,* 269 S.W.3d 847, 852 (Ky. 2008). Ward argues that there is nothing suspicious about being parked in a church parking lot, regardless of the time of day, but we disagree. Parking in a church lot, a private parking lot, at approximately 4:00 in the morning, in a high-crime area that residents recognize is a place where prostitution occurs, with a young female as your passenger, certainly constitutes suspicious behavior. One of the officers testified that upon seeing the vehicle's occupants, they immediately perceived S.R. to be a juvenile. The police officers were aware of all these factors as they approached the vehicle, before the seizure occurred and the ensuing investigatory stop was legally justified. The trial court was correct in finding the stop/seizure permissible and in declining to suppress either S.R.'s statement or the gun discovered upon Ward's arrest.

## II. The trial court did not err in excluding evidence that S.R. previously engaged in prostitution.

At trial, the court applied the Rape Shield Law, Kentucky Rule of Evidence (KRE) 412, to preclude Ward from presenting evidence that S.R. told police she had exchanged sex for money approximately one month prior to the events in question. The Commonwealth argued successfully that the Rape Shield Law was designed to prevent the introduction of evidence such as S.R.'s disclosure. Ward countered then, and argues now, that he should have been permitted to introduce S.R.'s statement because it fits within an express exception to KRE 412.

KRE 412 provides that evidence of other sexual behavior by an alleged victim or of an alleged victim's sexual predisposition is generally inadmissible,

9

with three exceptions in criminal cases.[2] Ward maintains that S.R.'s statement to the police should have been admitted under the exception allowing admission of "any other evidence directly pertaining to the offense charged." KRE 412(b)(1)(C). We disagree.

As this Court has stated, "[t]he rule's drafters noted that this third exception was included only as a safety valve to allow for unanticipated circumstances in which evidence of a victim's prior sexual conduct would be appropriate. They cautioned, however, that it should be invoked 'carefully and sparingly,' so as not to undermine the rule's objective of protecting against unwarranted attacks on the character of the alleged victim." *Montgomery v. Commonwealth*, 320 S.W.3d 28, 40 (Ky. 2010), (citing Robert G. Lawson,

---

[2] In relevant part, the rule provides:

(a) Evidence generally inadmissible. The following evidence is not admissible in any civil or criminal proceeding involving alleged sexual misconduct except as provided in subdivisions (b) and (c):

    (1) Evidence offered to prove that any alleged victim engaged in other sexual behavior.

    (2) Evidence offered to prove any alleged victim's sexual predisposition.

(b) Exceptions:

    (1) In a criminal case, the following evidence is admissible, if otherwise admissible under these rules:

        (A) evidence of specific instances of sexual behavior by the alleged victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence;

        (B) evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct offered by the accused to prove consent or by the prosecution; and

        (C) any other evidence directly pertaining to the offense charged.

*Kentucky Evidence Law Handbook*, p. 166 (4th ed. 2003)) (citing and quoting

from Evidence Rules Study Committee, Kentucky Rules of Evidence—Final

Draft, p. 36 (Nov. 1989)).

In *Montgomery*, this Court held that "evidence of a sexual offense victim's

prior sexual behavior pertains directly to the charged offense and thus is

admissible under the KRE 412(b)(1)(C) residual exception if, and only if,

exclusion of the evidence would be arbitrary or disproportionate with respect to

KRE 412's purposes of protecting the victim's privacy and eliminating unduly

prejudicial character evidence from the trial." 320 S.W.3d at 43. "An

evidentiary exclusion is not arbitrary if it meaningfully furthers a valid purpose

the rule was meant to serve. In determining whether the exclusion is

disproportionate, courts have weighed 'the importance of the evidence to an

effective defense, and the scope of the ban involved' against any prejudicial

effects the rule was designed to guard against." *Id.* at 42 (internal citations

omitted).

This Court has rarely addressed the residual exception to KRE 412.[3] As

stated in Lawson's *Kentucky Evidence Law Handbook*, this is an exception that

---

[3] *See Barnett v. Commonwealth*, 828 S.W.2d 361 (Ky. 1992). (The Court examined a virtually identical provision in KRE 412's predecessor statute in a case involving sex crimes committed against a twelve year old. The Commonwealth produced a physician who testified the victim had experienced "chronic sexual contact" and had identified the defendant as the perpetrator. This Court held that the defendant's evidence tending to show sexual acts between the victim and her brother was improperly excluded; it was admissible to prove the perpetrator was someone other than the defendant, a circumstance now addressed by KRE 412(b)(1)(A).). *Violett v. Commonwealth*, 907 S.W.2d 773 (Ky. 1995). (A stepfather, accused of sexually abusing his stepdaughter, sought to introduce the stepdaughter's letters describing sexual activity with her boyfriend to further his defense that the two concocted the sex

11

should be reserved for "exceptional, unforeseeable, and occasional use." §
2.35[3][d] (5th ed. 2013). Significantly, KRE 412 expressly provides that in
order to fall under this residual exception, the evidence must *"directly"* pertain
to the offense charged (emphasis supplied). Ward was charged with first-
degree sodomy, possession of a handgun (which S.R. testified Ward held to her
cheek during the sodomy) by a convicted felon and being a PFO. S.R.'s past
history of prostitution does not "directly" pertain to any of those offenses and
nothing suggests this is an "exceptional" or "unforeseeable" case which justifies
an exception to the general rule of exclusion. *Id.*

Although Ward's defense rested on the fact that the oral sex was
consensual, he had other opportunities to develop his prostitution defense,
without introducing S.R.'s statement to the police that she had engaged in
prostitution approximately one month prior to the night in question. Ward
testified in his own defense at trial, offering testimony about their discussion of
sex for money or for a place to shower and sleep. He was also permitted to
cross-examine S.R. about what happened that night. On cross-examination,
Ward's counsel asked S.R.: "at the time though that you claim he brings this
up, this idea of exchanging money for oral sex . . . at that point, in your head,

---

crime charges in a conspiracy to get him out of their way. This Court ruled that the
letters were inadmissible under the residual exception because the defendant was
given other opportunities to develop his conspiracy defense.). *Anderson v.
Commonwealth,* 63 S.W.3d 135 (Ky. 2001). (On facts very similar to *Barnett,* this
Court held that the evidence was relevant to explain the physical evidence suggesting
the child victim had engaged in previous sexual activity, and to allow the defendant to
rebut the inference of guilt.).

you understand that he believes you're a prostitute?" and S.R. responded "right." Further, Ward's counsel reiterated, through both S.R.'s and Ward's testimony, that at no point did S.R. try to get out of the car or contact the police for help. Applying the *Montgomery* test, the exclusion of S.R.'s statement was neither arbitrary nor disproportionate. It furthered the rule's valid purpose of excluding unduly prejudicial evidence without depriving Ward of his ability to present an effective defense.

Notably, federal case law offers some guidance in cases where defendants seek to introduce evidence of a victim's prior prostitution. In *United States v. Rivera,* the United States Court of Appeals for the Second Circuit dealt with the federal equivalent of the Rape Shield Law, where a defendant sought to admit evidence of a sex-trafficking victim's prior prostitution.[4] 799 F.3d 180, 185 (2d Cir. 2015). The court held that such evidence was not relevant to proving whether the defendant, in trafficking the victims, threatened the victims with violence or deportation to coerce them into commercial sex. *Id.* The very purpose of the Rape Shield Law is to preclude defendants from arguing "that because the victim previously consented to having sex — for love or money — her claims of coercion should not be believed." *Id.*

---

[4] The language of the residual exception to Federal Rule of Evidence (FRE) 412(b)(1)(C) differs from Kentucky's residual exception. FRE 412(b)(1)(C) states that evidence of sexual misconduct may be admitted if the exclusion of the evidence would violate the defendant's constitutional rights. Because presenting an effective defense is a constitutional right under the Fifth Amendment, and because Kentucky courts weigh the importance of the evidence to an effective defense, Kentucky's residual exception in KRE 412(b)(1)(C) and the federal rule overlap.

13

In *United States v. Taylor*, defendants sought to introduce evidence of the victims' prior prostitution as relevant to show that the commercial sex activities in the sex-trafficking case before the court were consensual and not forced by the defendants. CR-15-214, 2018 WL 5832066, at *3 (M.D. Pa. Nov. 7, 2018). The defendants insisted that the prior prostitution showed that the women "freely consented" to engage in prostitution and that no coercion was required, but the federal district court held that excluding the evidence of past prostitution was appropriate under FRE 412 and did not violate the defendant's constitutional rights to present a complete defense and to cross-examine the witnesses. *Id.* at *6. Although the defendants argued that the past prostitution evidence directly pertained to their defense, the court rejected that premise and noted that the defendants could still cross-examine the victims regarding whether they were forced to engage in the commercial sex at issue. *Id.* In an earlier case, the First Circuit held that evidence of prior acts of prostitution "is either entirely irrelevant, or of such slight probative value in comparison to its prejudicial effect that a decision to exclude it would not violate [the defendant's] constitutional rights." *United States v. Gemma*, 818 F.3d 23, 34 (1st Cir. 2016).

Similarly, in *United States v. Cephus*, defendants charged with sex trafficking of minors by coercion sought to introduce evidence of a victim's prior prostitution to show that she was not coerced. 684 F.3d 703, 708 (7th Cir. 2012). They argued that having already worked as a prostitute, the victim should not have been deceived by one of the defendants and therefore her

14

testimony claiming she was coerced into working for him should be disbelieved. *Id.* The Seventh Circuit ruled the evidence of the victim's prior prostitution inadmissible, holding that the evidence was irrelevant because it would not show that "she consented to be beaten," *i.e.*, the fact that the victim had been a prostitute before did not prove that the defendant did not threaten and beat her on the occasion at issue. *Id.* Notably, coercion was an element of one of the charged offenses (18 U.S.C. § 1591(a)) and the court still excluded the evidence of prior prostitution even though it arguably supported the defendant's defense theory.

*Cephus* parallels Ward's case in that S.R.'s statement to the detective that she had previously been a prostitute was irrelevant to whether she consented to the conduct with Ward, conduct which she testified included him threatening her with a gun and claiming he would shoot her if she did not cooperate. Sodomy in the first degree requires proof that the defendant engaged in deviate sexual intercourse by means of forcible compulsion, meaning by use of physical force or threat of physical force that places a person in fear of death or physical injury. Kentucky Revised Statute (KRS) 510.070; KRS 510.010. Even if S.R. had been a prostitute in the past, Ward's sodomy charge was based on his use of forcible compulsion by means of a handgun to threaten S.R. into performing oral sex; her prior conduct was irrelevant to whether she consented to perform oral sex at gunpoint on the night in question. *Cephus*, 684 F.3d at 708. Employing the language of KRE

15

412(b)(1)(C), S.R.'s past prostitution did not "directly" pertain to the crime charged and indeed was irrelevant.

Importantly, KRE 412(b)(1) states that in a criminal case, evidence falling under one of the three exceptions must still be "otherwise admissible under these rules," meaning the Kentucky Rules of Evidence. This implicates KRE 403, which requires that the trial court balance the probative value of the evidence against its potential for prejudice. Here, we cannot say that the probative value of S.R.'s statement regarding previous prostitution outweighs the prejudice it would cause. Evidence of S.R.'s prior prostitution would not show that she consented to being forced at gunpoint to perform oral sex that night, but it would be highly prejudicial to S.R. and distract from the charges being tried.

In sum, the exceptions to KRE 412 should only be used to the extent necessary to secure fairness and justice for those accused of sexual offenses. The trial court did not err in excluding evidence regarding S.R.'s past conduct, evidence not "directly" relevant to the charges under KRE 412(b)(1)(C)). Moreover, Ward had other means, through his own testimony and the cross-examination of S.R., to develop his defense that S.R. solicited him that night. The trial court's ruling was neither arbitrary nor disproportionate under *Montgomery* and presents no ground for reversal.

### III. The trial court did not err in allowing evidence that S.R. was seventeen at the time the crime was committed.

At trial, Ward sought to exclude evidence of S.R.'s age at the time of the alleged crimes on the grounds that her age was irrelevant given that the

16

Commonwealth did not have to prove her age as an element of any of the charged offenses. He argued that even if the evidence of age was deemed relevant, it would be more prejudicial than probative because the jury would hold S.R.'s youthful age against him. The Commonwealth countered that S.R. being seventeen years old was relevant because it could help the jury understand why she got in a car with a stranger. The trial court allowed evidence of S.R.'s age but instructed the Commonwealth to also inform the jury (through appropriate law enforcement testimony) that Kentucky's age of consent is sixteen. On appeal, Ward argues that the trial court erred in allowing evidence of S.R.'s age.

The trial court did not err in allowing testimony of S.R.'s age at the time of the offense because, even though her age was not an element of the charged offenses, it was still relevant information. The appearance of Ward, who was fifty-one years old at the time the offense was committed, and a teenage girl together in a parked car at 4:00 in the morning, in a high-crime area of Louisville contributed to the police officers' reasonable suspicion that criminal activity was afoot when they made the stop in the first place. Her young age gave context to the initial police encounter.

Further, this Court has allowed the admission of background information about a victim, such as the victim's age. *Brown v. Commonwealth*, 297 S.W.3d 557, 560 (Ky. 2009) (allowing evidence that passenger in defendant's vehicle during high speed chase leading to multiple charges was only sixteen years old). "Such evidence is not unduly prejudicial to a defendant

17

unless the victim is 'glorified or enlarged,'" or the evidence is used to arouse sympathy. *Id.* Here, we see no evidence that S.R.'s age was emphasized. As Ward points out, the Commonwealth asked S.R. to state her age when she first took the stand at trial. S.R. stated that she was currently twenty years old, and later volunteered that she was "seventeen then." Regardless of her testimony, the jury could have easily inferred her approximate age at the time of the crime, three years earlier, based on her youthful appearance in the courtroom.

Interestingly, Ward seems to suggest that there would be no issue if S.R. had merely testified to the fact that she was twenty years old at the time of trial, but that Ward was "helpless to complain" when S.R. essentially blurted out that she was seventeen when the alleged crimes occurred. As Ward acknowledges, however, the jury could have easily done the math to determine she was seventeen years old when the crimes occurred, because they were fully aware of the date of the alleged crimes. To now argue that he was prejudiced by her expressly stating she was seventeen in August 2014 is illogical. The trial court did not err in allowing the evidence.

**IV.    The trial court properly concluded that introducing evidence of S.R.'s age did not open the door to evidence that she had engaged in prostitution.**

After the trial court ruled that the Commonwealth would be allowed to introduce evidence of S.R.'s age at the time of the offense, Ward argued that if the Commonwealth could introduce her age then the defense should be able to show she was a prostitute in the past. Ward claimed this fact would show that

18

S.R. was not young and naïve when she got in the car with Ward, a stranger, but rather she was motivated by the potential exchange of money for sex. The trial court ruled that informing the jury of S.R.'s age did not open the door to evidence that she had previously engaged in prostitution. In the trial court's view, the evidence that S.R. was in downtown Louisville alone walking the streets at 4:00 a.m. gave the defense ample room to argue against any perceived naïveté.

On appeal, Ward maintains that even though the Commonwealth did not present S.R. to the jury as a naïve, innocent young person who made a mistake by getting in the car with Ward, evidence of her age "empowered" the jury to draw this false inference. As this Court has often held, however, "[a] jury is entitled to draw all reasonable inferences from the evidence." *Moore v. Commonwealth*, 462 S.W.3d 378, 388 (Ky. 2015).

We reject the notion that S.R.'s statement about prior prostitution should have been admitted to "answer the false and misleading inference" that she got in Ward's car because she was only seventeen and naïve. As noted above, Ward testified that the oral sex was consensual, and that S.R. agreed to perform it in exchange for a place to shower and sleep. Through this testimony, he effectively painted S.R. as a young prostitute out on the street in the early hours of the morn, without introducing inadmissible evidence of her prior sexual conduct.

Moreover, as Ward acknowledges, "opening the door" in the evidentiary arena refers to a circumstance where one party's use of inadmissible evidence

19

allows the other party to introduce equally inadmissible evidence that answers the initial evidence "in a reasonable way without sacrifice of other important values." *Commonwealth v. Stone*, 291 S.W.3d 696, 702 (Ky. 2009) (quoting 1 Mueller & Kirkpatrick, *Federal Evidence*, § 1:12, 75-76 (3d. 2007). In this case, S.R.'s age was properly admissible evidence, rendering the opened door concept inapplicable, but even if it were not admissible, the admission of her statement regarding prostitution would "sacrifice [the] important value" reflected in KRE 412.

**V.    The trial court erred in refusing to allow Ward to stipulate to his status as a convicted felon, but that error was harmless.**

During the "convicted felon in possession of a handgun" guilt phase of the proceeding, the Commonwealth stated its intention to introduce an earlier conviction for sodomy to prove that Ward was a felon prohibited from possessing a handgun. Insisting that introduction of his previous sodomy conviction would be highly prejudicial, Ward offered to stipulate to the fact that he was a convicted felon, but the Commonwealth argued that it did not have to allow the stipulation. The trial court observed that the jury would hear about all of Ward's prior convictions during the next phase of trial, the PFO and sentencing phase, and that all of his convictions were prejudicial. Ultimately, the Commonwealth agreed to use Ward's prior first-degree robbery conviction to establish his felon status in the handgun possession phase.

On appeal, Ward argues that the trial court erred by refusing to allow Ward to stipulate his prior conviction and allowing evidence that Ward had previously been convicted of first-degree robbery. Ward's argument is premised

on this Court's express adoption of *Old Chief v. United States*, 519 U.S. 172 (1997). The Commonwealth concedes that the trial court erred.

In *Anderson v. Commonwealth*, this Court adopted the limited holding from *Old Chief*, that "a defendant charged with being a felon in possession of a firearm may stipulate to having a prior felony conviction, even without the Commonwealth's consent." 281 S.W.3d 761, 762 (Ky. 2009). In *Anderson*, the defendant was charged with possession of a handgun by a convicted felon and the Commonwealth sought to introduce evidence of Anderson's prior felony conviction for receiving stolen property and escape. *Id.* Anderson offered to stipulate to being a convicted felon to avoid potential prejudice from disclosing the details of his prior convictions, but the trial court denied his request. *Id.* at 762-63. The Commonwealth introduced the details to the jury, and Anderson was ultimately convicted of the firearm possession charge. *Id.* at 763.

In *Old Chief*, the United States Supreme Court acknowledged "that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." 519 U.S. at 185. Further, the Court concluded that "there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence." *Id.* at 191. In *Anderson*, this Court decided to join the overwhelming majority of courts by adopting *Old Chief*, and holding that:

> upon request, a criminal defendant charged with being a felon in possession of a firearm may stipulate (with the Commonwealth's agreement) or admit (if the Commonwealth

does not agree) that the defendant has been previously convicted of a felony. Such a stipulation or admission would mean that the jury would simply be informed that the defendant was a convicted felon, for purposes of the felon in possession of a firearm charge, but would not be informed of the specifics of the defendant's previous felony conviction(s).

281 S.W.3d at 766.

Based on *Anderson*, 281 S.W.3d at 762, we conclude that the trial court abused its discretion in denying Ward's request to stipulate to his prior felony conviction. However, "no error . . . or defect in any ruling . . . is ground for granting a new trial or for setting aside a verdict . . . unless it appears to the court that the denial of such relief would be inconsistent with substantial justice." *Id.* (quoting Kentucky Rule of Criminal Procedure (RCr) 9.24). "A non-constitutional evidentiary error may be deemed harmless . . . if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89, (Ky. 2009).

At trial, the Commonwealth introduced very little evidence about Ward's prior felony conviction. A single witness who obtained certified copies of Ward's criminal record testified that Ward was convicted of first-degree robbery in Jefferson County, that he entered a guilty plea, and provided the date of the offense. No other information was given. Ward argues that this error is not harmless, because the prior robbery conviction was an inherently violent crime. We disagree. The jury was not given any violent details, or even any information regarding what constitutes first-degree robbery. We cannot say that "there was a reasonable possibility that the jury's knowledge of [Ward's]

22

specific prior convictions might have contributed to his conviction any more than their general knowledge of his status as a convicted felon would have." *Anderson*, 281 S.W.3d at 767. While the trial court's denial of Ward's request to stipulate his convicted felon status was error, it was harmless.

## VI. The trial court did not err by failing to sever the possession of a handgun charge for trial by a different jury.

The trial court held several hearings on the issue of how to structure the trial. Initially, Ward and the Commonwealth agreed to a trifurcated trial, but questions arose as to whether the possession of a handgun charge should be severed completely for later trial. After the court heard arguments on multiple occasions, it finally ordered Ward's trial to be held in three parts: (1) a guilt phase for the sodomy charge, (2) a guilt phase for the convicted felon in possession of a handgun charge, and, if needed, (3) a penalty/PFO phase. The trial court conducted the two guilt phases separately, before proceeding to one consolidated penalty phase for all counts, with all phases before the same jury. Ward claims that the trial court erred in allowing the handgun charge to be tried in front of the same jury who considered the sodomy charge.

Under RCr 8.31 "[i]f it appears that a defendant or the Commonwealth is or will be prejudiced by joinder of offenses," the trial court must sever the charges "or provide whatever other relief justice requires." This Court has held that a handgun charge should be severed from other charges to "avoid the prejudice that necessarily arises from a jury learning of a defendant's otherwise inadmissible criminal history when considering guilt or innocence on other charged offenses." *Wallace v. Commonwealth*, 478 S.W.3d 291, 303 (Ky. 2015)

23

(citing *Hubbard v. Commonwealth,* 633 S.W.2d 67, 68 (Ky. 1982)).

Consequently, the trial court properly severed the handgun possession charge from the sodomy charge so the jury would not learn during the first phase that Ward was already a convicted felon. (In fact, because Ward testified in the first phase, the jury learned of his convicted felon status through his own testimony.). The question becomes whether the trial court erred in conducting the separate guilt phases for sodomy and the handgun with the same jury. We find no error.

In *Hubbard,* the defendant was charged with burglary, being a felon in possession of a handgun, and being a PFO. 633 S.W.2d at 68. Hubbard sought to sever the possession of a handgun charge from the burglary charge to avoid prejudice, but the trial court denied his request, and the Commonwealth introduced evidence of Hubbard's previous burglary conviction. *Id.* Thus, in considering his guilt for the current burglary charges, the jury was aware of Hubbard's previous conviction, which otherwise would have been inadmissible and was clearly prejudicial. *Id.* This Court analogized the severance of a felon-in-possession charge with the two-stage proceeding used in PFO cases. *Id.* The purpose of separating the proceedings is to "obviat[e] the prejudice that necessarily results from a jury's knowledge of previous convictions while it is weighing the guilt or innocence of a defendant on another charge." *Id.*

Later, in *Wallace,* this Court expounded on *Hubbard* in its first review of a case using the trifurcated trial process. 478 S.W.3d at 291. In *Wallace,* the

24

defendant argued that the trial court abused its discretion by trifurcating the trial into two guilt phases (first, five counts of robbery and then, felon in possession of a handgun) with a consolidated penalty phase, instead of separately trying the possession charge in front of a different jury. *Id.* at 302. Wallace suggested that the prejudice to be avoided by severance could flow into the handgun charge, and therefore even bifurcation of a trial's guilt phase "cannot adequately handle the prejudice of trying the charges in a single trial." *Id.* at 304. This Court acknowledged that a defendant could be prejudiced by having the jury hear the felon-in-possession charge after having heard evidence on other charges that paint him in a bad light and "which would not have been admissible at a separate trial of the severed handgun charge." *Id.*

For illustration, the *Wallace* Court provided the hypothetical of a man with a felony conviction who moves in with a relative after being released from jail. *Id.* Investigations later reveal that he has been downloading and selling child pornography, leading to his arrest and the execution of a search warrant for the residence. *Id.* During the search, the officers discover pornography and a handgun under the convicted felon's bed. *Id.* The convicted felon is indicted for child pornography and felon in possession of a handgun charges. *Id.*

The Court stated that in the above scenario, severance of the handgun charge to a completely new trial and jury would be required to avoid prejudice from the jury having knowledge of the just-adjudicated felony conviction for child pornography. *Id.* Bifurcation "would be inadequate to protect against the prejudice of trying these unrelated crimes to the same jury because the

25

defendant would also be highly prejudiced by the jury's awareness of the child pornography offenses when considering the defendant's guilt or innocence on the firearm charge." *Id.*

However, in *Wallace* this Court found no error in the same jury hearing both the robbery charges and the handgun possession charge.

> But such reciprocal prejudice is not present here. Joinder is proper on these charges because the facts are inextricably intertwined. A primary factor for finding prejudice requiring severance "is the extent to which evidence of one offense would be admissible in a trial of the other offense. *Ratliff v. Commonwealth*, 194 S.W.3d 258, 264 (Ky. 2006) (quoting *Commonwealth v. Collins*, 933 S.W.2d 811, 816 (Ky. 1996)). It is clear the robbery evidence would necessarily be admissible at a separate trial of the handgun charge because the handgun charge arose from Wallace's alleged use of the weapon during the commission of the robberies. And, since he used a handgun in the robberies, the fact that he possessed a handgun is integral and obvious in the robbery charges.
>
> . . . .
>
> Since proof of the circumstances of each of the robberies is highly probative of Wallace having possessed a handgun during this period of time, the fact that this was an illegal activity does not mean this is not integral to the proof. The bottom line here is that the evidence of the robberies would have been admissible at a separate trial of the handgun charge for the purpose of proving the possession element of that crime.

*Id.* at 304-05. The *Wallace* Court concluded that although knowledge of Wallace's prior robbery convictions was arguably prejudicial, "[w]hen a handgun is used in the underlying offense by the person charged with being a felon in possession of a handgun, the rationale for severance for prejudice

26

running from the underlying charge to the handgun charge does not apply." 478 S.W.3d at 305.

Here, Ward's charges were not unrelated offenses where the evidence of each offense would be "mutually inadmissible at separate trials." *Id.* Although a sodomy charge does not require the possession or use of a handgun, in this case Ward used the handgun to force S.R. to perform oral sex. Ward argues that if the handgun charge had been tried separately in front of a different jury, the evidence of the sodomy conviction would have been inadmissible as "other crimes" under KRE 404(b). However, as *Wallace* holds, where the handgun is used in the underlying offense by the person charged, evidence of that offense is admissible and "the rationale for severance for prejudice running from the underlying charge to the handgun charge does not apply." *Id.* at 305.

Contrary to Ward's assertions, the sodomy evidence was "inextricably intertwined" with the handgun evidence. KRE 404(b)(2). The handgun charge arose from Ward's alleged use of the gun during "deviate sexual intercourse with another person by forcible compulsion." KRS 510.070. Forcible compulsion "means physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person. . . . " KRS 510.010(2). Ward's use of the handgun satisfied the forcible compulsion element of the crime because he threatened physical injury or death to S.R. if she did not comply with his orders, rendering the two charges intertwined. Indeed, the forced sodomy evidence was particularly important to prosecution of the possession of a handgun by a

27

convicted felon charge because Ward testified that the gun belonged to his former girlfriend, who had shared his vehicle, and he did not even know it was in the car. Evidence of the intertwined sodomy crime refuted that claim. In sum, the trial court did not abuse its discretion in declining to try the handgun charge in front of a new jury.

## CONCLUSION

For the reasons set forth above, the judgment of conviction and sentence of the Jefferson Circuit Court is affirmed.

Minton, C.J.; Keller, Lambert, VanMeter and Wright, JJ., sitting. All concur.

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Leilani K.M. Martin
Assistant Attorney General