RENDERED:  AUGUST 14, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-001083-MR

LEONARD HORNSBY                                                              APPELLANT

v.              APPEAL FROM KENTON CIRCUIT COURT
                HONORABLE PATRICIA M. SUMME, JUDGE
                ACTION NO. 16-CR-00901

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, COMBS, AND MAZE, JUDGES.

ACREE, JUDGE:  Appellant, Leonard Hornsby, appeals his convictions for assault in the first degree and possession of a handgun by a convicted felon.  He alleges multiple errors by the Kenton Circuit Court.  After careful review of the record, we affirm.

## BACKGROUND

On May 9, 2016, Hornsby was crossing the street in Covington, Kentucky, when he encountered Mark Snell. Hornsby and Snell disliked each other. An argument ensued.

Ethan Mattrella and Vincent James, who were sitting on a porch nearby, intervened. This led to a confrontation between Hornsby and Mattrella. Mattrella picked up a board or stick and swung it at Hornsby. Hornsby left the scene, went to his nearby apartment, then returned moments later. The argument reignited, and Hornsby shot Mattrella in his groin area. Hornsby fled.

Mattrella was rushed to the University of Cincinnati Medical Center, where he was treated by Dr. Malcom Baxter. According to Dr. Baxter, the bullet lodged in the subcutaneous tissue of Mattrella's right gluteal region. Dr. Baxter found it best to leave the bullet where it was rather than cutting through tissue to remove it.

Hornsby was arrested a few months later by police in Davidson County, Tennessee. He was indicted on charges of assault in the first degree and possession of a handgun by a convicted felon. The charges were tried separately. Hornsby was appointed counsel;[1] however, at his first trial, he expressed his

---

[1] Ashley Graham, and Daniel Schubert, the directing attorney at the Department of Public Advocacy's Covington trial office, as second chair.

dissatisfaction with counsel. He sought appointment of new counsel or, in the alternative, to represent himself. The circuit court refused to substitute counsel and, after holding a *Faretta*[2] hearing, granted Hornsby's request to represent himself, with standby counsel present.

A jury found Hornsby guilty on both counts. He was sentenced to nine years of imprisonment on the possession charge and ten years of imprisonment on the charge of assault in the first degree. The sentences were to run concurrently for a total of ten years. This appeal followed.

## ANALYSIS

Hornsby asserts the circuit erred by: (1) failing to appoint substitute counsel to represent him; (2) failing to grant a directed verdict in his favor on assault in the first degree; (3) allowing the Commonwealth to introduce his prior felony convictions to prove he was a convicted felon; and (4) allowing the Commonwealth to elicit expert testimony from Dr. Baxter, who was called to the stand as a fact witness. We address each issue in turn.

### Substitute Counsel

Hornsby asserts the circuit court deprived him of his constitutional right to counsel when it denied his request to substitute counsel. Specifically,

---

[2] *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

Hornsby contends there was a complete breakdown in communication, warranting the appointment of new representation. We disagree.

Hornsby was appointed a public defender on October 26, 2016. It was not until April 5, 2017, the day of his trial for possession of a firearm, that he expressed dissatisfaction with appointed counsel. The circuit court inquired into his dissatisfaction. Hornsby asserted he did not trust appointed counsel, counsel did not have his best interest in mind, they were unprepared, and that he had only seen them three times since his incarceration. Counsel, on the other hand, recalled having at least five meetings with Hornsby, four of which were substantive in nature. Moreover, they had conducted a complete investigation into his case. One of his attorneys stated that Hornsby refused to communicate with her the day before trial.

The circuit court refused to substitute counsel and granted a continuance to allow Hornsby time to prove he could competently represent himself under *Faretta*. On June 12, 2017, the circuit court held a *Faretta* hearing and, again, addressed whether replacement counsel was warranted. Hornsby reiterated his concerns and alleged that evidence was being withheld from him. His counsel rebutted these assertions. The circuit court did not find good cause to substitute counsel, but granted Hornsby's request to represent himself, with appointed counsel as standby.

"The Sixth Amendment of the United States Constitution and Section Eleven of the Kentucky Constitution provide a defendant with the right to counsel." *Grady v. Commonwealth*, 325 S.W.3d 333, 341 (Ky. 2010).  However, an indigent defendant who is appointed counsel "does not have a constitutional right to be represented by any particular attorney, and is not entitled to the dismissal of his counsel and the appointment of substitute counsel except for adequate reasons or a clear abuse by counsel." *Henderson v. Commonwealth*, 563 S.W.3d 651, 668 (Ky. 2018) (citation omitted).  An indigent defendant seeking the appointment of substitute counsel "carries the burden of demonstrating to the court that there exists good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict." *Stinnett v. Commonwealth*, 364 S.W.3d 70, 81 (Ky. 2011) (internal quotation marks and citation omitted).

"Whether good cause exists for substitute counsel to be appointed is within the sound discretion of the trial court." *Deno v. Commonwealth*, 177 S.W.3d 753, 759 (Ky. 2005) (citation omitted).  Therefore, we will not disturb the circuit court's determination of insufficient cause absent an abuse of discretion. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Ryan v. Ryan*, 473 S.W.3d 637, 639 (Ky. App. 2015) (citation omitted).

The record reflects Hornsby's appointed counsel met with him on at least five separate occasions, prior to his initial trial date. Four of these meetings related to the substance of his case. His appointed counsel also provided him with all discovery in their possession. Hornsby's refusal to meet with or communicate with appointed counsel does not amount to a complete breakdown in communication. Nor does his dissatisfaction with how appointed counsel was managing his case amount to good cause sufficient to substitute counsel. *See Stinnett*, 364 S.W.3d at 81 (concluding mere dissatisfaction with appointed counsel's performance is insufficient to support a motion to support his removal). We conclude the circuit court did not abuse its discretion in refusing to substitute counsel.

Hornsby also contends that the circuit court's failure to hold this hearing *ex parte* is reversible error. The Commonwealth was present during the hearings relating to his request for substitute counsel. However, the record does not indicate that Hornsby requested an *ex parte* hearing. Nor has he pointed to any case law establishing the requirement of an *ex parte* hearing in this instance. However, the Kentucky Supreme Court has noted that *ex parte* hearings "should only occur in the rarest of circumstances and only when the trial court feels that such a hearing is necessary to ensure a just trial." *Lester v. Commonwealth*, 132 S.W.3d 857, 862 (Ky. 2004).

Hornsby has not shown, or attempted to show, that an *ex parte* hearing was necessary to ensure a just trial. The circuit court reminded Hornsby that the Commonwealth was present, and anything he said could be used against him. Moreover, substantive and strategic issues were not discussed during the hearing, rendering any error harmless.

***Directed Verdict***

Hornsby's next point of contention is that the circuit court erred by failing to grant a directed verdict in his favor on the charge of assault in the first degree. We disagree.

"[T]he elements of assault in the first degree are that [the defendant] (1) intentionally (2) caused serious physical injury to [his victim] (3) by means of a deadly weapon or dangerous instrument." *Dixon v. Commonwealth*, 263 S.W.3d 583, 589 (Ky. 2008); KRS[3] 508.010(1). The Commonwealth must present at least a scintilla of evidence to support each of these elements to justify instructing the jury on first-degree assault. *Lackey v. Commonwealth*, 468 S.W.3d 348, 352 (Ky. 2015) (citation and internal quotation marks omitted) ("To defeat a directed verdict motion, the Commonwealth must only produce more than a mere scintilla of evidence.").

---

[3] Kentucky Revised Statutes.

At the close of evidence, Hornsby moved for a directed verdict. His basis, however unartfully articulated,[4] was that the Commonwealth had failed to present even a scintilla of evidence to support the second element – that Mattrella suffered a "serious physical injury." Hornsby's motion put into play the following rule of law: "[A] trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ." *Wright v. Carroll*, 452 S.W.3d 127, 132 (Ky. 2014) (citation omitted).

After considering the evidence presented, the circuit court denied Horsnby's motion, finding that a reasonable jury could conclude he shot Mattrella and caused serious physical injury. We find no error in the circuit court's denial of the motion.

Whether the assault on Mattrella resulted in a serious physical injury was a question of fact for the jury. *See Clift v. Commonwealth*, 105 S.W.3d 467, 471 (Ky. App. 2003) (emphasis in original) (quoting *Rowe v. Commonwealth*, 50 S.W.3d 216, 221 (Ky. App. 2001)) ("whether the injury created 'prolonged impairment of health' '*was a proper question for the jury to determine*'"); *see also*

_____

[4] The Commonwealth persuasively argues that Hornsby did not preserve this specific argument for appeal because his directed verdict motion related to other elements of the charge. (Appellee's brief, pp. 13-15.) Nevertheless, we reviewed this argument as though it was preserved.

*Meece v. Commonwealth*, 348 S.W.3d 627, 716 (Ky. 2011) ("jury should determine the essential elements of an offense"). That question could only be taken from the jury if, considering the evidence as a whole, it would be clearly unreasonable for a jury to conclude Mattrella's physical injury was serious. Such a conclusion would not be clearly unreasonable.

Dr. Baxter provided detailed testimony regarding Mattrella's injuries and treatment. He testified that a projectile entered Mattrella's left groin region and lodged in his right gluteal region. Because the projectile was lodged in soft tissue, it would likely remain there indefinitely but could work its way out of the body; most likely, however, is that scar tissue will form around it. Additionally, Dr. Baxter testified as to potential complications from an injury of this type, such as infection. Mattrella himself testified to the severity of his pain.

This injury was not superficial. *See Luttrell v. Commonwealth*, 554 S.W.2d 75, 77 (Ky. 1977) (finding no serious physical injury where an officer was struck in the chest with birdshot, leaving "superficial" wounds). The bullet entered his groin area near the femoral artery and femoral vein and penetrated deeply into his flesh, passing from the front of his body to the backside, where it remains. This evidence is sufficient to justify presenting to the jury the fact question of whether the physical injury was serious and denying a directed verdict.

## Prior Felony Convictions

At Hornsby's trial for possession of a handgun by a convicted felon, the Commonwealth sought to introduce his 1988 judgment of conviction for robbery, theft, and kidnapping. Hornsby's objection to the proof was overruled.

He concedes the Commonwealth must prove he is a convicted felon, but asserts that "reading the charges for which [he] was convicted, and imparting their serious nature to the jury, unfairly prejudices [him] . . . ." He argues it would have been sufficient for the Commonwealth to state that he had a prior felony conviction, instead of stating the basis for that conviction.

In *Old Chief v. United States*, the Supreme Court of the United States acknowledged "that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." 519 U.S. 172, 185, 117 S. Ct. 644, 652, 136 L. Ed. 2d 574 (1997). The Kentucky Supreme Court, adopting this rationale in *Anderson v. Commonwealth*, held:

> upon request, a criminal defendant charged with being a felon in possession of a firearm may stipulate (with the Commonwealth's agreement) or admit (if the Commonwealth does not agree) that the defendant has been previously convicted of a felony. Such a stipulation or admission would mean that the jury would simply be informed that the defendant was a convicted felon, for purposes of the felon in possession of a firearm charge, but would not be informed of the specifics of the defendant's previous felony conviction(s).

281 S.W.3d 761, 766 (Ky. 2009).

Here, the record does not indicate that Hornsby stipulated to having a prior felony conviction, nor did Hornsby "request to stipulate to his prior felony conviction" as in *Ward v. Commonwealth*, 568 S.W.3d 824, 836 (Ky. 2019). Absent both, proof was necessary and reading the conviction to the jury sufficed.

However, Justice Cunningham, in a concurring opinion in *Anderson* which Justice Scott joined, suggested that a defense objection such as Hornsby made should be sustained because the circuit court cannot compel the Commonwealth to agree to stipulate. *Anderson*, 281 S.W.3d at 767 (Cunningham, J., concurring). This is not what the majority opinion says and, therefore, is not precedent this Court must follow. However, if it were the law, it would not justify reversal here because the error would be harmless.

"[N]o error or defect in any ruling . . . is ground for granting a new trial or for setting aside a verdict . . . unless it appears to the court that the denial of such relief would be inconsistent with substantial justice." *Id.* at 766 (quoting Kentucky Rule of Criminal Procedure (RCr) 9.24). "A non-constitutional evidentiary error may be deemed harmless . . . if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283 S.W.3d 678, 688-89 (Ky. 2009); *see Ward*, 568 S.W.3d at 836. Other than the basis of the conviction, the jury was not given any details of Hornsby's prior conviction, nor were they given information regarding

-11-

the elements of his prior conviction. This Court is fairly assured that the jury was not substantially swayed, nor the outcome affected, by any error if such it was. Any error here was harmless.

### *Expert Testimony*

Hornsby next asserts the circuit court erred by allowing the Commonwealth to elicit expert testimony from Dr. Baxter, who was called as a fact witness. We review the circuit court's ruling for an abuse of discretion.

Both parties elicited testimony from Dr. Baxter. The Commonwealth noted its intention to call him as a fact witness, while Hornsby sought to introduce him as an expert witness. Prior to trial, Hornsby objected to the Commonwealth's use of Dr. Baxter as an expert; the Commonwealth objected to Hornsby's asking Dr. Baxter whether there was a serious physical injury. Prosecutors again stated they were only calling him as a fact witness. The circuit judge allowed Hornsby to ask whether Mattrella suffered a serious physical injury and, to the extent Hornsby intended to use Dr. Baxter as an expert, noted, "within the bounds I will sustain your request, but we will see where it goes."

During trial, the Commonwealth first questioned Dr. Baxter on his qualifications. It then proceeded to elicit both lay and expert testimony from Dr. Baxter. For example, Dr. Baxter testified about possible risks associated with being shot in the groin area, such as infections. He was also asked to identify the

major organs around the bullet when explaining Mattrella's CAT scan. Likewise, Hornsby was also allowed to elicit expert testimony from Dr. Baxter. He questioned Dr. Baxter about Mattrella's medical reports, the extent of his injuries, and whether his injuries were life-threatening. The only objections sustained during Hornsby's examination related to hearsay, relevance, and information outside the scope of Dr. Baxter's expertise.

Lay witnesses may not give opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." KRE[5] 701(c). However, in *McDaniel v. Commonwealth*, expert opinions were elicited from a doctor who was tendered as a lay witness. 415 S.W.3d 643, 654-55 (Ky. 2013). The Kentucky Supreme Court noted KRE 701 "is specifically intended to combat the possibility of counsel avoiding the reliability standards set out in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) . . . ." *Id*. at 654. And, because the Commonwealth provided a sufficient basis for the doctor's expertise, there was no violation of KRE 701 "because the evil that this rule seeks to avoid, the introduction of unreliable expert opinions through a lay witness, was prevented by [the doctor's] qualification pursuant to KRE 702." *Id*. at 655.

---

[5] Kentucky Rules of Evidence.

Likewise, although Dr. Baxter was tendered as a lay witness, the Commonwealth provided a sufficient basis for his expertise. Therefore, KRE 701 and 702 were not violated.

Hornsby's argument that he was denied his right to present a defense because the circuit court deprived him access to Dr. Baxter, as an expert, lacks merit. As noted above, Hornsby was given the opportunity to, and, in fact, did question Dr. Baxter as an expert.

*Cumulative Error*

Finally, Hornsby contends there is cumulative error. "We have found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010) (citation omitted). None of the errors alleged by Hornsby was prejudicial. Therefore, we find no cumulative error.

## CONCLUSION

We affirm the decision of the Kenton Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

John Gerhart Landon
Molly Mattingly
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

James Havey
Assistant Attorney General
Frankfort, Kentucky